# Crawford *versus* Scovell.

1. A grantor in a deed may avoid his conveyance by proof that he was *non compos mentis* at the time of its execution, where there is no evidence of ratification after restoration to reason.

2. To avoid his deed, it is not necessary that an insane man should put the grantee in *statu quo*, for one of the obvious grounds on which the deed of an insane man is held voidable is not merely the incapacity to make a valid sale, but the incapacity prudently to manage and dispose of the proceeds, Hence to avoid his conveyance no previous offer of restitution is necessary.

3. A committee cannot be appointed to bring suit for a sane man, because at one time he was a lunatic. He must bring suit himself to recover his rights, and may prove insanity to avoid a deed set up against him on the same terms as if he were defendant in the action, and the plaintiff were supporting his case with the same deed.

March 16th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Error to the Court of Common Pleas of *Wyoming county:* Of January Term 1880, No. 161.

Ejectment by Ira Crawford against John Scovell for an acre of land.

[Crawford v. Scovell.]

At the trial, before Ingham, P. J., the plaintiff proved possession in himself and in those under whom he claimed, accompanied by proper conveyances, from 1844 to 1875, and rested. The defendant put in evidence a deed for the land in dispute from the plaintiff to him, dated 11th March 1876, and rested.

The plaintiff then offered to prove by one Wandall that he did the business for defendant in arranging for procuring this deed; also to prove what the witness knew about the consideration paid and the whole transaction, for the purpose of showing the insanity of Crawford, as well as Scovell's knowledge of it, and that there was an inadequacy of compensation. Also, that the bargain was unconscionable and unfair.

The defendant objected to the offer as irrelevant, and as introducing a defence that is not admissible as against the plaintiff's deed, viz., the defence of insanity. Also, that the offer is not full enough, in that before the plaintiff can avoid the deed, he must prove that he has offered to restore to the defendant what he paid for the property; and also, that it is not permissible for a party to allege his own insanity in a suit brought by himself against his sealed instrument or his executed contract. Objections sustained.

· Plaintiff also offered to prove by this and other witnesses that Crawford was insane at the time he signed the deed, and therefore was incapable of executing such an instrument. Also, that it was procured by fraud, and that Scovell had knowledge of the insanity of Crawford. Objected to, for the reasons assigned in first offer, and objections sustained.

The court instructed the jury: " The deed offered, being a good and sufficient deed from the plaintiff to the defendant, is a sufficient defence in this action of ejectment, and your verdict should be for the defendant."

Verdict accordingly, and after judgment thereon, plaintiff took this writ and alleged that the court erred in refusing to admit the evidence under the above offers.·

*Sittser & Harding*, for plaintiff in error.—In 2 Kent's Com. 451, it is said: The party himself may set up as a defence and in avoidance of his contract that he was *non compos mentis* when it was alleged to have been made. The principle advanced by Littleton and Coke that a man shall not be heard to stultify himself, has been properly exploded as being manifestly absurd and against natural justice: Warden v. Eichbaum, 2 Harris 121; Bensell v. Chancellor, 5 Whart. 371; Cook v. Parker, 4 Phila. R. 265.

But in rejecting our offer to show the insanity of the plaintiff at the time of signing the deed, with notice of that insanity to the defendant at the time, the court swept away our offer to show that the deed was procured by fraud. The principle upon which the

[Crawford *v.* Scovell.]

evidence offered was rejected seemed to be, that if a party asserts and offers to prove that he was insane at any particular time prior to the commencement of suit, his evidence on that and every other subject should not be heard. · If such a fact, when asserted by a party, is fatal to his case, it should have the same effect when proved against him by the other side.

· *W. E. & C. A. Little* and *William M. Piatt & Sons*, for defendant in error.—Plaintiff's first offer was to show his own insanity generally; and his second was to show his insanity at the time of the execution of his deed to the defendant. He did not offer to show that he had recovered his reason. By the application of a well-known rule, if we are to believe that·he was insane at the time of the execution of his deed, we must presume that he continues insane : Leech *v.* Leech, 9 Harris 67, 69.

The common-law rule, that " a man shall not be heard to stultify himself," has not been so far changed that a recovered lunatic may, in the action of ejectment, destroy his own indenture. None of the authorities cited by the plaintiff go to this extreme length. If it be that his deed can be disaffirmed, it should only be by bill in equity, whereby the defendant would have notice of the facts and claims against him, and time in which to prepare his evidence.

The committee of the lunatic must be joined as plaintiff: Uberoth *v.* Bank, 9 Phila. 83. If the lunatic can sue alone, who will be responsible for costs or vouch for it that the lunatic will not afterwards disaffirm his disaffirmance.

. It is urged that the plaintiff was not allowed to show that the deed was procured from him by fraud. As an independent offer, it is insufficient in that it stands unconnected with an offer to prove an attempt to restore to the defendant his purchase-money : Pearsoll *v.* Chapin, 8 Wright 9 ; see, also, Morrow *v.* Rees, 19 P. F. Smith 368. This offer as made was also irrelevant. It was to show fraud by the witness, not the specific acts from which the court could decide whether a fraud had been committed.

Mr. Justice TRUNKEY delivered the opinion of the court, March 22d 1880.

A formal offer was made to prove that Ira Crawford was insane when he executed the deed to John Scovell, that Scovell knew of the insanity and procured the deed by fraud. This was overruled on the objection that the offer was not full enough, in that, before the plaintiff can avoid the deed he must have offered to restore its consideration ; that a plaintiff cannot allege his own insanity against his deed, and that the witness was incompetent because of his instrumentality in perpetrating the fraud. No objection was made that the specific acts were not set out in the offer, and it is too late to object now. That the witness was competent is not

[Crawford v. Scovell.]

doubtful. As the case comes it presents these questions : 1. Can a plaintiff, who brings suit himself, prove his insanity to defeat his deed given in evidence by the defendant ? 2. Can he prove that the defendant knew of the insanity when he took the deed ? 3. May he show the deed was procured by fraud ? and 4. Must he restore the consideration before bringing suit ?

1. It is a general rule that a grantor in a deed may avoid his conveyance by proof that he was *non compos mentis* at the time of its execution : Bensell *v.* Chancellor, 5 Whart. 371 ; 2 Kent's Com. 451 ; Gibson *v.* Soper, 6 Gray 279. Like the deed of an infant, a lunatic's deed may be ratified and confirmed. Where there is no evidence of ratification after restoration to reason, it is impossible, upon legal principles, that the estate passed to the grantee in the deed. An insane person is incapable of making a valid deed, for he wants the consenting mind. " The law makes this very incapacity of parties their shield. In their weakness they find protection. It will not suffer those of mature age and sound mind to profit by that weakness. It binds the strong while it protects the weak. It holds the adult to the bargain, which the infant may avoid ; the sane to the obligation from which the insane may be loosed. It does not mean to put them on an equality. On the other hand, it intends that he who deals with infant or insane persons shall do it at his peril. Nor is there practically any hardship in this, for men of sound minds seldom unwittingly enter into contracts with infants or insane persons :" Gibson *v.* Soper, *supra.*

In Molton *v.* Camroux, 2 Exch. 487, an action to recover money paid for annuities, it was held that when a person apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property which is fair and bona fide, and which is executed and completed, and said property has been paid for and enjoyed, and cannot be restored so as to put the parties *in statu quo*, such contract cannot afterwards be set aside, either by the alleged lunatic or those who represent him. Like doctrine prevailed in Beals *v.* See, 10 Barr 56. The decision in Lancaster County Nat. Bank *v.* Moore, 28 P. F. Smith 407, rests on the same principle—there was neither fraud nor knowledge of the insanity. Without inconsistency, in Moore *v.* Hershey, 9 Norris 196, it was ruled that it is competent in an action by an endorsee of a note made by a lunatic, for the lunatic to defend, either by showing that the endorsee had knowledge of the lunacy, or that the note was originally obtained fraudulently, or without proper consideration. PAXSON, J., said, " I know of no case in which it has been held that a lunatic, when sued upon his contract, may not show want of consideration." After speaking of the rule which had been urged in favor of the plaintiff, he adds, " We place our ruling upon the broad ground that the principle of commercial law above referred

to does not apply to the case of commercial paper made by madmen."

In Elliott *v.* Ince, 7 De G., M. & G. 475 (487) it is said that Molton *v.* Camroux was called a decision of necessity, and it is suggested that the same principle might apply to sales of land or mortgages.    But in this country that rule is not universally . extended to sales of personalty and is not applied to conveyances of real estate.    However, on that principle, or the one in Bensell *v.* Chancellor, the offered testimony was admissible for the purpose of avoiding the deed.

The defendant urged that the plaintiff did not propose to show he had recovered his reason, and, upon the truth of his offer, the law presumes he continues insane; wherefore he cannot maintain the action and allege his insanity.    Under the general issue in assumpsit, the defendant may show, in avoidance of the contract, that he was insane at the making of it.    If he continues a lunatic he may not appear and plead by attorney, and if it so appears on examination the plea by attorney may, before judgment, be treated as a nullity, and a guardian be appointed who will be entitled to plead *de novo :* Mitchell *v.* Kingman, 5 Pick. 431.    So, when a plaintiff is met by a deed, good on its face, he may avoid it by proof that he was insane when it was executed.    If his reason has been restored he has no other means of protection.    A committee cannot be appointed for a sane man because he was at one time insane.    He must bring suit himself to recover his rights, and may prove insanity to avoid a deed set up against him, on the same terms as if he were defendant in the action, and the plaintiff were supporting his case with the same deed.    The principle contended for by the defendant would deprive a man, who had been *non compos mentis*, of remedy for recovery of his property, without fault on his part, and might work his utter ruin.    If, at the trial, he should appear to be insane, the court would treat him and his cause as it would any other plaintiff suffering under like malady.

2. From the foregoing it is manifest that it is competent to prove the defendant had knowledge of the insanity when he took the deed.    If unnecessary for its avoidance, it may be material on the question of restoration of the consideration.    He who knowingly deals with a madman takes the risk of losing.

3. For like reason it may be proved that the deed was procured by fraud.    Even the holder of negotiable paper may fail to recover because the maker was insane, when, but for that, there would be no defence to his action on the ground of fraud or want of proper consideration.    Proof that the bargain was unfair and unconscionable would be pertinent in determining the equitable claim of the defendant.

4. The consideration need not be restored before commencement of the action, nor after, in all cases.    To say that an insane man

[Crawford v. Scovell.]

before he can avoid a voidable deed, must put the grantee in *statu quo*, would oftentimes be to say his deed shall not be avoided at all. The more insane the grantor was when the deed was made, the less likely will he be to retain the fruits of his bargain so as to be able to make restitution. One of the obvious grounds on which the deed of an insane man is held voidable is not merely the incapacity to make a valid sale, but the incapacity prudently to manage and dispose of the proceeds of the sale. And the same incapacity which made the deed void may have wasted the price, and made the restoration of the consideration impossible: Gibson *v.* Soper, *supra*. In that case the defendant contended there could be no recovery because restitution had not been offered, and thereupon the plaintiff proposed, if anything was due, to make such restitution and repayment in such way and manner as the court should direct. The question was, as it is here, whether restoration is a condition precedent to recovery, and not whether under any circumstances a grantee, after avoidance of the deed, may recover back a part or the whole of the price paid. It was said that if the grantor, having been restored to sound mind, still retains and uses the consideration of the deed without offer to restore, or seeks to enforce the securities, or avail himself of the contract which constituted such consideration, such conduct may furnish satisfactory, and, it may be, conclusive evidence of a ratification. That would be an entirely different case from one where the grantor wasted the price he received before his reason was restored. Although the deed has not been ratified, and consequently the plaintiff is entitled to recover the land, should it appear that, in equity, the whole or a part of the consideration ought to be restored or repaid, under the practice in this state, there would be no difficulty in doing justice between the parties by a conditional verdict and judgment.

Judgment reversed, and *venire facias de novo* awarded.