Franklin Street Methodist Episcopal Church *v.* Crystal Oil & Gas Co., Appellant.

Argued October 3, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*F. J. Hartmann,* with him *Campbell, Wick, Houck, Thomas & Nixon,* for appellant.—A gasoline service station situate on a principal business street, and in a district zoned as "main business section," can not be found to be located other than in a commercial district.

The operation of a gasoline station in a commercial district may not be enjoined as a nuisance per se: Manorville Boro. v. Flenner, 286 Pa. 103; Penna. Co. v. Sun Co., 290 Pa. 404.

The operation of a gasoline service station in such a district may not be enjoined as a nuisance on the ground of anticipated danger in the absence of any evidence of improper construction or operation: Penna. Co. v. Sun Co., 290 Pa. 404; Rhodes v. Dunbar, 57 Pa. 274.

The storage of gasoline in large quantities in thickly populated districts is not dangerous in itself: Manorville Boro. v. Flenner, 286 Pa. 103; Shaw v. Transit Co., 4 Pa. C. C. R. 363.

*Frank P. Barnhart,* with him *Samuel R. DiFrancesco,* for appellee.—Whether a particular locality is residential or business is a matter resting in the discretion of the chancellor and the appellate court will not interfere unless it is clear that discretion has been abused: Nesbit v. Riesenman, 298 Pa. 475; Ladner v. Siegel, 293 Pa. 306.

The evidence is sufficient to sustain findings that the district is partly residential and partly business: Burke v. Hollinger, 296 Pa. 510; Nesbit v. Riesenman, 298 Pa. 475.

In determining the question of nuisance, location and surroundings are of first importance and the test is as to the immediate neighborhood and not remote districts: Burke v. Hollinger, 296 Pa. 510; Krocker v. Mill Co., 274 Pa. 143.

The operation of the station may be enjoined as a private nuisance: Seibert v. Sebring, 22 Pa. Dist. 530; Boehm v. Phila., 59 Pa. Superior Ct. 441; Phillips v. Donaldson, 269 Pa. 244; Carney v. Oil Co., 291 Pa. 371.

Opinion by Mr. Justice Linn, November 28, 1932:

Appellant's filling station was constructed pursuant to a permit issued by the City of Johnstown under its zoning ordinance, and according to regulations enforced by bureau of fire protection, department of state police. The conduct of its business is not a nuisance per se: Carney v. Penn Oil Co., 291 Pa. 371, 140 A. 133; Sprout v. Levinson, 298 Pa. 400, 148 A. 511; Nesbit v. Riesenman, 298 Pa. 475, 482, 148 A. 695; Long v. Firestone Tire Co., 303 Pa. 208, 154 A. 364; even the proper storage of large quantities of gasoline is not: Manorville Boro. v. Flenner, 87 Pa. Superior Ct. 84, and 286 Pa. 103, 133 A. 30; see, too, Penna. Co. v. Sun Oil Co., 290 Pa. 404, 138 A. 909. Whether the decree prohibiting it can be sustained, under the law as applied in this State, depends on the nature and character of the surrounding property and the uses to which it is put. Common experience recognizes that persons, while in one locality or district, must tolerate inconvenience and annoyance that would be regarded as intolerable in another. Under the principles applied in the decisions cited above, the operation of a filling station will be enjoined in a residential district, but relief cannot be given to persons in a commercial district from the annoyance or discomfort ordinarily incident to such business. In this case, there is no evidence that will support a finding of anything extraordinary or unusual in appellant's operations, or extra-hazardous in the construction of its equipment. The decree therefore cannot be sustained.

Appellant's filling station, consisting of a one-story, concrete-block office, three underground one thousand gallon tanks, and three service pumps, was constructed on a lot 38 feet on Franklin Street and 62.2 feet on Lo-

cust Street in Johnstown, a city of the third class. The station replaced two old frame buildings that had been used for business purposes. By the zoning ordinance, the lot is in the "main business district," a fact to be considered, though not decisive: Perrin's App., 305 Pa. 42, 51, 156 A. 305. The church is on the same side of Franklin Street and on the corner opposite appellant's station. The church property is bounded by those two streets and by two narrow alleys, one leading into Franklin and the other into Locust Street. This section of Franklin Street is one of the two most important business streets in the city; the other, Main Street, intersecting it at right angles half a square from the church, extends parallel with Locust Street. A part of the church is opposite a park which occupies one square. It is the oldest church in the city, with a large and active congregation. There can be no dispute that for several squares around, this locality is the principal business center of the city, given over entirely to business, commercial, or other activity not residential, except to a small extent to be mentioned. The distance from the nearest tank to the nearest wall of the church is 82 feet. The streets are in very active use by vehicular traffic; 136 busses stop daily along the park front opposite, or diagonally opposite, the church. A witness—the captain of traffic—testified that, on a date given, he counted an average of 732 vehicles per hour passing the church on Franklin and Locust Streets; but as his count seems to have covered only a ten-minute period, we attach very little importance to the figures. He testified, however, that it was "one of the most congested" sections in the city; that there was a "fairly steady stream of traffic passing and repassing the church" on both streets "all day long." A witness, called by plaintiff, testified that "cars are parked all along the block in which the Methodist Church is located," "day in and day out, whether it is week-day or Sunday." The opposite side of Franklin Street, from the park to Washington Street (the next

street parallel with Locust and Main Streets) is occupied by business places; so, too, is Washington Street from Franklin to Clinton Streets on the side opposite the tracks of a railway company. On Franklin Street, within half or little more than half a block from the church, are two filling stations, and within the same block on Locust Street, though on the opposite side, there is a public garage and service station. Across the twelve feet wide alley, bounding the church, and on the same side of Locust Street, is the Elk's Club House; adjoining this is an open parking lot used for the storage of automobiles. Adjoining this parking lot is a building occupied as an office and residence; then come two occupied as residences, and one occupied in the conduct of taxicab business. Immediately opposite the church on Locust Street, and alongside plaintiff's station, is a three-story building devoted to business purposes on the lower floor and apartments over head. Other buildings on the same side, between the last named and the public garage, are occupied by doctors' offices, and an alderman's office, with parts of these buildings occupied by persons who reside there. This description sufficiently indicates the general character of the neighborhood, of which the court made the following finding: "6. The neighborhood in which the proposed service station is to be constructed is in part business and in part residential......" The indefinite finding, "in part business and in part residential," is not sufficient, on the point of user, to sustain the decree. The evidence will support only one legal finding on the subject, and that is, that business and commercial use of property in the district so predominates over the relatively slight use for residential purposes that, in determining whether a court may restrict an owner in the enjoyment of his property by the circumstance of surrounding user, this locality must be considered as devoted to business and commercial use and not to residential use within the rule applied in Burke v. Hollinger, 296 Pa. 510, 146 A. 115; Sprout

v. Levinson, supra; Long v. Firestone Co., supra; Carney v. Penn Oil Co., supra; Prendergast v. Walls, 257 Pa. 547, 101 A. 826.

The record also contains the following findings: "8. That if the defendant erects and operates a filling station [it was erected when the case was tried] on the lot aforesaid there will be odors, noises and dangers connected with the business which will disturb the plaintiff in the peaceful enjoyment of its property, and will also endanger the lives and safety of the children and other persons attending the Sabbath School and the other services held in said church. 9. That there will be more than the ordinary danger of explosions and fires incident to defendant's business from the storage of gasoline which will be in the containers on said premises and which may and is likely to find its way into the basement of the building and be ignited by the flames which are constantly burning in said basement. 10. That it will be impossible for the defendant to successfully conduct its business on said lot so as to avoid noises, disagreeable odors as complained of by the plaintiff, which are necessarily attendant upon the maintenance of a service station of the size and character as indicated by the evidence in this case."

The evidence is that defendant's station was constructed in accord with approved plans and specifications for such structures and according to the requirements of the bureau of fire protection. Each tank, covered with asphalt paint, is imbedded in the ground on a six-inch concrete base; it is packed in loam, with the top more than two feet below the surface. A supervisor, connected with the bureau of fire protection, testified that there were "between 80,000 and 120,000 tanks and drawing-off devices approved under our regulation" in the State. He inspected this station. The tanks are constructed of material slightly heavier than required by the regulations; each pump is equipped with a visiguage, which "will show leaks in the line to a point

where it passes on to the tank, two or three inches from the bottom." He testified that, to minimize the danger of explosion, provision was made to carry off fumes or vapors by "an open vent pipe......extending to a point twelve feet above the source of supply......"; he described the device, or screen, installed at the end of the pipe, to prevent a flame from flashing back into the tank; the flame is arrested by the screen and simply burns like a torch, and does not explode.

The church windows, opened only during the summer, are on the side opposite the station. A member of the church, called on its behalf, testified: "I would say that the auditorium is not occupied except on Sundays. Q. Would you say that any of the noises that you speak about would interrupt any church service except those held on Sunday? A. I don't hardly think they would. Q. And they would not be interrupted except during the warmer weather when the windows on the north side of the building would be open? A. Yes." Another member testified that he "would not be disturbed by it. Noises don't bother me that much."

Asked about the odors, he said: "My point is that the [station] is directly opposite the auditorium of the church and the noises and smells would come directly into the auditorium. Q. What odors do you get in the auditorium? A. Well, it depends on what the odors are outside. Q. Well, from this gas station, what more odors have you got? A. We haven't gotten any yet." While the evidence will not sustain a finding that defendant's station is in a residential district, we are not clear that the learned chancellor would have held that the use of the land was a nuisance, if he had found that the locality was commercial. In examining the findings quoted, we first note that it has long been settled that "Bills to restrain nuisances, must extend only to such as are nuisances at law, and that the fears of mankind, though they be reasonable ones, will not create a nuisance": quoted in Rhodes v. Dunbar, 57 Pa. 274, 289,

from an anonymous case reported in 3 Atk. 750 (1752). We have carefully considered the evidence of danger by fire and by explosion, but must hold that the danger spoken of by the witnesses and by the chancellor amounts to nothing more than a possibility, remote in probability, and entirely too uncertain in the existing state of the law to justify restraint in the use of land for a purpose not uncommon in the near vicinity. As to noise, the evidence is clear that, except during the summer when windows happen to be open, it will not be heard. We must recognize that under the evidence the noise, incident to the present active use of the two streets described in the evidence, will ordinarily be but slightly increased by appellant's operation. As the passage quoted above from the adjudication is in form a prediction and not a finding of an existing fact, it may perhaps be said now, that if the noise produced by defendant's operation, or any other incident of it, shall exceed the ordinary and usual inconvenience and annoyance incident to such business, and shall then sufficiently interfere with the services conducted in the church as to constitute a nuisance, equity will afford means of keeping defendant within the law. The evidence is that traffic conditions on the two streets have improved by the removal of the buildings formerly on defendant's lot and the setting-back of its equipment; it has resulted in an enlargement of view of approaching traffic. In Sprout v. Levinson, supra, we said: "Doubtless the stopping of many cars for filling purposes, and the maintenance of lights so that business may be continued after nightfall, interfere to a certain extent with the enjoyment of complainant's property as a dwelling house, but this is the necessary consequence of a legitimate occupation managed in the most approved manner, in a district devoted to purely commercial purposes, and furnishes no ground for restraint......"

The decree is reversed, the bill is dismissed without costs to either party.