Duty et al., Appellants, *v.* Vacuum Oil Co. et al.

16

Argued October 3, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*James R. Orr,* with him *Howard Zacharias* and *David B. Pitler,* for appellants.

*Clyde A. Armstrong,* with him *Roy G. Bostwick,* of *Thorp, Bostwick, Reed & Armstrong,* for appellee, Vacuum Oil Company, Inc.

*James M. McCandless,* for appellee, Observatory Post No. 81, of the American Legion.

Opinion by Mr. Justice Maxey, November 26, 1934:
This is an appeal from the dismissal of a bill seeking to restrain the erection of a gasoline, service, and filling station at the southeast corner of Perrysville Avenue and Legion Street, Pittsburgh. Appellants are the owners and occupiers of dwelling houses fronting on these streets. The dwelling on plaintiffs' properties which is

nearest to the proposed service station building is 108 feet away and 60 feet distant from the closest proposed pump. On Maple Avenue there is a public school, the entrance to which is opposite Legion Street. This school has an enrollment of about 850 pupils, 50 per cent of whom use Legion Street four times daily.

Plaintiffs' properties are situated in a Class "A" residential district under the zoning ordinance of the City of Pittsburgh, from which zone gasoline service stations are excluded. The situs of the proposed station is in a district which is zoned as commercial. In this zone a gas service station can be erected only on certain conditions, inter alia, with the written consent of the owners in interest and number of a majority of all the property fronting upon the same block within eighty feet of the site in question. The defendants obtained the written consents of the requisite percentage of the property owners but not the consent of plaintiffs.

In May, 1933, the American Legion Post, as owner, leased to the Vacuum Oil Company for a period of five years, beginning July 1, 1933, that portion of their premises fronting on Perrysville Avenue, a distance of approximately seventy feet and extending along Legion Street a distance of sixty feet and upwards. The Vacuum Oil Company propose to erect, maintain, and operate on the premises so leased a public service gasoline filling, supply and lubricating station, consisting of a service station building, a sales room, four gasoline pumps, and other equipment, where gasoline and automobile tires and accessories would be sold.

After plaintiffs' bill was filed, a preliminary decree was entered, restraining the Vacuum Oil Company from erecting, maintaining, and operating the proposed filling station. Subsequently, the American Legion Post obtained permission to join in the proceedings in opposition to the bill. After hearing, the chancellor found that the operation of the proposed filling station would be a nuisance per se, and entered a decree nisi perpetually re-

straining the oil company and the American Legion Post from erecting and maintaining it. The defendants filed exceptions and the case was heard before the court in banc. The latter, with the chancellor dissenting, sustained many of the exceptions and entered a final decree dismissing the bill of complaint.

In Sprout v. Levinson, 298 Pa. 400, 148 A. 511, this court held that the construction of garages in places surrounded exclusively by residences, constitutes a nuisance per se, the operation of which will be enjoined, and the same has been held of gas or filling stations, but "a different situation arises where the district is commercial, the right to maintain in such cases depending on proof as to whether the continuance of operations constitutes a nuisance in fact," citing cases. The court said further in that case, in an opinion by Mr. Justice SADLER: "The determination of the character of the surroundings is often difficult, since the location in question may have the characteristics of both classes mentioned, in which case the court must say whether the attempted use constitutes such an interference with the rights of adjoiners as to justify restraint. . . . In view of the justified conclusion, reached by the trial court in this case, that the district in question is commercial rather than residential, . . . an injunction could not be granted unless in fact its use constituted a nuisance. . . . The mere fact that the adjoiner is subjected to some annoyances furnishes no ground for relief where he resides in a commercial district, for he must bear the inconvenience arising from his location just as he enjoys the benefits."

In Franklin Street Methodist Episcopal Church v. Crystal Oil & Gas Co., 309 Pa. 357, 163 A. 910, this court said, in an opinion by Mr. Justice LINN: " . . . The operation of a filling station will be enjoined in a residential district, but relief cannot be given to persons in a commercial district from the annoyance of discomfort ordinarily incident to such business." It is true that there, as appellants point out, the lot was in the main

business district, which this court said was "a fact to be considered, though not decisive." However, the principle stated there is equally applicable here. When the zoning ordinance was originally adopted by the City of Pittsburgh in 1923, appellants' properties were included in a commercial district. This also included the site of the proposed filling station. In 1929, the appellants' properties by an amendment to the zoning ordinance were reclassified into "a residential district." The court below found as facts the following: (27) "As defined by the said Zoning Ordinance of the City of Pittsburgh, a Class C residential district is the highest and most exclusive type of the three residential districts provided for in the said ordinance; Class B is the next exclusive type and Class A, in which the plaintiffs' properties are now classified, is the least exclusive type of residential districts." (28) "Plaintiffs' properties front upon and the view therefrom is toward business properties on both sides of Perrysville Avenue." (44) "Up to within approximately a year before the hearing in this case, a gasoline pump or pumps were operated on Perrysville Avenue, directly opposite plaintiffs' properties."

It was admitted by one of the appellants that there was "a continuous growth of store rooms" in that vicinity (i. e., in the vicinity of plaintiffs' properties). There are double street car tracks on Perrysville Avenue in front of appellants' properties. A traffic count made there on Saturday, July 8th, and Sunday, July 9, 1933, established the facts that between 7:00 a. m. and 12 p. m. on the first day mentioned the total number of vehicles of all kinds passing the corner of Perrysville Avenue and Legion Street was 7,076, and on the following day between the same hours, was approximately 6,000. It is true that on the appellants' side of Perrysville Avenue the properties are residential, but it is equally true that practically all of the properties directly across the street are used for business purposes, and that all of the properties on both sides of the street going southwardly from ap-

pellants' properties are business properties, and that other business places are being constructed in the same district. These facts negative any contention that plaintiffs' properties are in what could be called "an exclusive residential district."

Appellant stresses the fact that the erection of the station in question would constitute a hazard to the school children who use the streets in that vicinity. The school district did not intervene in this proceeding. The principal of the school was called in behalf of plaintiffs and asked whether the gasoline station would be a menace to the children. He replied: "I should say, as a general fundamental principle, . . . anything that tends to increase vehicular traffic of any kind . . . would be somewhat of a menace, I would think. . . . I do not know to what extent it would increase traffic." A little later in answer to a specific question of the chancellor as to the effect on the safety of the children of this gasoline station, he said: "I don't feel I am competent to answer that question positively and conclusively. It would depend partially upon the gasoline station, how it is operated and how clean it is kept, whether free of grease. . . . We have fifty per cent or 450 children using the street going to and from school. Whether that would increase the hazard to the children I don't know. . . . I shouldn't think it would increase the hazard appreciably; it might somewhat." The court's 39th and 40th findings of fact read as follows: (39) "There will be no appreciable increase in any existing hazard to school children by reason of the construction and operation of the proposed filling station." (40) "School authorities had and have knowledge of the proposed filling station; they have considered its location and surrounding circumstances, and have no complaint or fear of any appreciable increase in any hazard to school children by reason of the location or operation of the proposed filling station." Gasoline stations are not inherently menaces to children or others. Ordinarily automobilists drive carefully in and out of

filling stations; there speed is not customarily indulged in.

Many cases similar to this one reach the courts but no formula is yet evolved—and none ever will be—for the infallible determination in every instance whether the erection of such a station should be enjoined. In Ebur v. Alloy Metal Wire Co., 304 Pa. 177, at 182, 155 A. 280, we quoted with approval the following from 46 C. J. 655-6: "A fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case. . . . Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable is sometimes a question of law and at other times a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable." The word "reasonable" is not susceptible of exact definition. What may be reasonable under one set of facts may be unreasonable under another. In cases of this character members of the court below are likely to be familiar with the neighborhood involved, and their findings and decisions, as to the reasonableness of the thing complained of, properly carry great weight in the appellate courts.

Modern life yields many by-products offensive to the senses. The very street cars which pass plaintiffs' properties are doubtless annoying to plaintiffs and to their neighbors. Yet such cars have become city necessities. The burdens of the "machine age" go hand in hand with its benefits. Gasoline stations have equally become necessities. They, like railroad stations, must be located where they are reasonably convenient of access. All these

stations are undoubtedly annoying to those who dwell in their neighborhood but the annoyances of modern life which are inseparable from it cannot be throttled by the strong hand of equity without doing violence to that life itself. As Justice AGNEW, speaking for this court, aptly said in the case of Huckenstine's App., 70 Pa. 102, "A court exercising the power of a chancellor, whose arm may fall with crushing force upon the everyday business of men, destroying lawful means of support, and diverting property from legitimate uses, cannot approach such cases as this with too much caution. Its aid is not of right but of grace, and it must be sure that the exercise of this kingly power is just, wise and proper, before it takes from a citizen his means of livelihood, and destroys the value of his property for legitimate uses. And more than this, it must look at the customs of the people, the characteristics of their business, the common uses of property and the peculiar circumstances of the place wherein it is called upon to exercise the power. In no other way can its justice, wisdom and propriety be exhibited in adjudicating upon the rights, interests and employment of the people subjected to its power. . . ."

The affirmance of this decree does not carry with it any license to the defendants to carry on their business without due regard for the rights of others in the same neighborhood. Plaintiffs are entitled to protection against offensive emanations from the gas and service stations in amounts and at times that are unreasonable. If in these respects plaintiffs' rights should be invaded, courts of equity are open for their vindication.

The decree is affirmed at appellants' costs.