Essick et al. *v.* Shillam, Appellant, et al.

Argued January 25, 1943; reargued May 10, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Harry R. Matten* and *Charles W. Matten,* of *Matten & Matten,* for appellant.

*Charles H. Weidner,* with him *Stevens & Lee,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 24, 1943:

This bill was filed by residents of Centre Avenue and North Fourth Street, in the City of Reading, to restrain defendants from erecting and operating a cash-and-carry store, or super-market, and parking lot for patrons of the store, at the corner of Fourth and Greenwich Streets in that city.

Greenwich Street runs east and west; Third and Fourth Streets run north and south, intersecting Greenwich Street at right angles. Centre Avenue, a main thoroughfare, crosses Fourth Street diagonally immediately north of the intersection at Greenwich Street. Windsor Street parallels Greenwich Street one block to the north. The area so described was found by the chancellor to be exclusively residential. There are no zoning restrictions or building restrictions covering the site of the proposed super-market.

The defendant, Isabel Shillam, owner of the premises in question, has entered into a lease with the defendant, The Great Atlantic & Pacific Tea Company, and has agreed with the defendants, Albert C. Burger and Eastern Land Construction Company, to erect a large one-story market house, with an adjacent hard-surfaced parking lot for patrons. The parking lot is to be con-

structed at the rear of the store building and will accommodate fifty automobiles. Its entrance will be on Fourth Street, and an exit will be provided onto Greenwich Street.

On the south side of Greenwich Street, which forms the southern boundary of the described area, and facing the site of the proposed market, is a garage, a tinsmith's shop, and a storage yard used by large trucks for parking. On Fourth Street, south of Greenwich, there are thirty private garages, a public garage, and some apartments. As stated by the chancellor: "It may be justly said that the . . . property is near the southern edge of a fine residential district."

Concluding that the establishment contemplated by defendants would constitute a nuisance in that locality, the chancellor entered a decree nisi granting an injunction. Defendants' exceptions were dismissed by the court en banc. The chancellor, SCHAEFFER, P. J., wrote the majority opinion. SHANAMAN, J., concurred, but held that the district was "predominantly" residential. A dissenting opinion was filed by MAYS, J., upon the grounds that the district was *not* predominantly residential, and that in any event the proposed establishment was not a nuisance per se, and would be enjoinable only if so conducted as to constitute a nuisance in fact. From the final decree defendants have taken this appeal.

The question involved is: Will the construction of a supermarket, grocery and provision store, with a parking lot for its patrons in a predominantly residential district, constitute a nuisance as a matter of law, regardless of the manner of operation, where the proposed use does not violate building restrictions or zoning laws?

The chancellor has found this locality to be exclusively residential, and the majority of the court en banc has held that it is, at least, *predominantly* residential. A careful review of the record indicates that the conclusion of the majority that the district is predominantly residential is supported by sufficient competent evidence,

and this court, therefore, will not disturb it: *Ladner et al.* v. *Siegel et al.,* 293 Pa. 306; *Duty et al.* v. *Vacuum Oil Co. et al.,* 317 Pa. 15; *Calvary Church et al.* v. *Jones et al.,* 322 Pa. 77. In the last cited case it was said (page 80) : "The question as to whether a particular locality is commercial or residential in character, and whether a proposed use of land within it would constitute an unreasonable infringement upon property rights of the inhabitants, is a matter which lies within the sound discretion of the court below, and its findings, when supported by evidence, will not be interfered with on appeal in the absence of manifest abuse of discretion."

Conceding, therefore, that the district is predominantly residential, it does not necessarily follow that the introduction of this commercial enterprise should be enjoined. The use contemplated is lawful. There is no zoning ordinance which interdicts it, nor is it barred by restrictive covenants in the deed to the premises. In *Pennsylvania Co., etc., et al.* v. *Sun Co.,* 290 Pa. 404, 408, the principle was stated : "An owner has a right, barring malice and negligence, to any use of his property, unless by its continuous use he prevents his neighbors from enjoying the use of their property to their damage." The damage must be real and substantial. "Equitable relief must be predicated on an injurious invasion of a fixed and determined property right. By injury is meant something affecting the capacity of the property for ordinary use or causing a discomfort in the enjoyment of it that threatens the health or welfare of the occupant, with resultant injury to the property :" *Ibid.,* 409. As stated in *Houghton et al.* v. *Kendrick et al.,* 285 Pa. 223, 226: "Any other use of a property than for residential purposes, may be, and at times is, an annoyance to dwellers in the vicinity. . . . But the mere fact of annoyance does not establish the existence of a nuisance, and hence, standing alone, it will not be a sufficient basis for an injunction against the particular use from which the alleged annoyance arises. He who lives in a

city must bear with the inconveniences growing out of his location there, just as he enjoys the benefits flowing from it." This is particularly true, where, as here, the property is on the fringe of a residential district. In *Burke et al.* v. *Hollinger,* 296 Pa. 510, 520, it was said: "It is apparent that when a residential district . . . borders on a commercial district, it must bear the inevitable consequences of being located so close to a district of that character." Compare *White et al.* v. *Country Club et al.,* 322 Pa. 147, in which, after an injunction had been granted, 318 Pa. 346, a petition was filed to modify the decree and the record remanded for a rehearing, 318 Pa. 569. We modified the order on a showing that the *locus* was in a twilight zone.

Because certain types of business, by the necessary incidents of their normal operation, deleteriously affect the health and comfort of the community, their establishment in residential districts has been held to constitute a nuisance as a matter of law. Public garages (*Ladner* v. *Siegel,* supra; *Phillips et al.* v. *Donaldson,* 269 Pa. 244), automobile service and filling stations (*Carney et al.* v. *Penn Oil Co.,* 291 Pa. 371; *Sprout* v. *Levinson et al.,* 298 Pa. 400; *Long et al.* v. *Firestone T. & R. Co. et al.,* 303 Pa. 208; *Perrin's Appeal,* 305 Pa. 42; *Thomas et al.* v. *Dougherty et al.,* 325 Pa. 525; *Pennell et al.* v. *Kennedy et ux.,* 338 Pa. 285; *Calvary Church* v. *Jones,* and *Burke* v. *Hollinger,* both supra) are the most common illustrations of enterprises in this category. Others may be found listed in *Pennsylvania Co., etc.,* v. *Sun Co.,* supra, at page 411.

Obviously, a community grocery store in a residential district is not such a nuisance per se. It has been held that such stores do not detract from the residential character of the vicinity. See *Calvary Church* v. *Jones,* supra, at page 80; *Burke* v. *Hollinger,* supra. Because, however, the establishment here proposed is a supermarket, designed to attract patrons from other communities and having as an adjunct a parking lot for

customers, the court below has placed it in the category of those enterprises which are nuisances as a matter of law when carried on in a residential area. No decision of an appellate court in this Commonwealth has been cited in support of this proposition, and it must be rejected.

The fact that the proposed store will attract numbers of persons to the community in automobiles, with the noises and odors peculiar to the operation of these vehicles, does not, in itself, entitle plaintiffs to an injunction. In *Sheets et al.* v. *Armstrong et al.*, 307 Pa. 385, where the court refused to enjoin the erection of a public auditorium in a residential district, it was said (pages 391-392) : "It is said that the use of the building will bring large numbers of people to it and will cause traffic congestion in its vicinity. These are among the plagues of city dwellers under present-day conditions, but it would be difficult legally to badge as a nuisance a building aiding in bringing about such situation." See also *Todd et al.* v. *Sablosky et al.*, 339 Pa. 504, 509, 512.

The possibility envisaged by the concurring judge below, that residents will find the parking spaces in front of their homes continuously obstructed, is not a necessary incident of the operation of the store. See *Todd* v. *Sablosky*, supra, at page 509. Should this condition materialize in the future, there is no reason why plaintiffs and others could not obtain from the civic authorities the designation of their house-frontages as "no parking" zones, particularly in view of the fact that defendants propose to provide ample parking facilities for their customers at the rear of the store. Even if this protection should be refused, an appropriate remedy is suggested by Chief Justice KEPHART in *Breinig et ux.* v. *Allegheny County et al.*, 332 Pa. 474, 478.

Furnishing a parking lot for patrons does not of itself stamp the enterprise as a nuisance. It cannot be regarded as a public garage: *Todd* v. *Sablosky*, supra;

*Breinig* v. *Allegheny County,* supra. Plaintiffs have placed much reliance on the former of these cases. There, building restrictions were involved, and the question was whether the operation of a theatre and stores, with a common parking lot, would constitute a nuisance in "a closely settled suburban community". It was held that the stores and theatre were not buildings of such a type that their normal use for the purposes intended would necessarily constitute a nuisance in that locality. As to the parking lot, however, it was decided that its contemplated operation would create a nuisance. This was predicated upon the following considerations (page 512) : "The parking lot would be in use not only during business hours by customers of the stores, but also throughout the evening by patrons of the theatre. *Large numbers of cars leaving the lot simultaneously at the end of each performance would produce noise and congestion to disturb the rest of the community.*" It was the fact that the lot would be in use every evening, and that, late at night, large numbers of cars would leave simultaneously that distinguished the case, in part, from *Breinig* v. *Allegheny County,* supra, where the use of a parking lot was restricted to the patrons of a single store, during business hours, and from *Phila. Fairfax Corp.* v. *McLaughlin et al.,* 336 Pa. 342, where the parking space was reserved to residents of an apartment house.

Here, the store will operate only upon week days, and will close at 6 p. m. daily, except Friday, Saturday, and days preceding holidays, when it will be open until 9 p. m. The latter hour is not late, and there is little likelihood that there will be a mass departure of customers from the lot at any one time. If, in the future, it is conducted in such a way as to become a nuisance in fact, appropriate action will be available to the plaintiffs.

The court should not be impressed by plaintiffs' fears that the store will be operated in a manner likely

to endanger their health and interfere with the comfort of their homes, because there is no evidence that such results are inevitable. It is, therefore, unreasonable to assume, as a matter of law, that the business of the lessee cannot be conducted in an orderly and inoffensive manner.

It has been pointed out that the lessee intends to illuminate the premises brightly, inside and out, and the parking lot as well. The chancellor has inferred that this illumination would create an objectionable and sleep-disturbing glare. Certainly, if the actual illumination has this effect, it can be adjusted to satisfy plaintiffs' objections, or, if necessary, enjoined at that time.

In short, there should be nothing in the construction of the store, or in the necessary consequences of its normal operation, to create a nuisance. The court cannot anticipate an improper use of the premises and sanction a restraining order founded upon surmise and speculation as to the future conduct of defendants. In *Rhodes et al.* v. *Dunbar et al.*, 57 Pa. 274, 287, it was stated: "That a thing may possibly work injury to somebody is no ground for injunction. If the injury be doubtful, eventual or contingent, equity will not interfere by injunction." Thus in *Todd* v. *Sablosky*, supra, where it was averred that one of the stores to be erected would be a super-market, and that it would be operated with all of the evils contemplated by the present plaintiffs, Justice Barnes said (page 509) : "Plaintiffs' allegation in the bill that such a market, if established, will 'probably' be conducted in an offensive manner is purely conjectural and argumentative . . .", and he concluded (page 511) : "If plaintiffs' fears regarding their future operation should be realized, adequate relief in equity will be available to them." The same comments are appropriate in this case.

It plainly appears, therefore, that the court below erred in granting an injunction at this time against defendants upon the ground that the proposed enter-

prise would be a nuisance per se if established in this community.

The decree is reversed; the injunction is dissolved, and the bill is dismissed at appellees' cost.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot agree with the majority in holding that the operation of a retail grocery super-market and adjoining parking lot is not a nuisance in a residential district. This is not to be an ordinary community store for the convenience of the immediate neighborhood. The admitted purpose of a super-market is to attract as many people as possible from other districts, who come by automobile; and, to meet their demands, a large stock of every form of fruit, vegetables, meat, fish and staples is carried. To attract customers, cream tile walls of this building are to be brilliantly lighted at night, and a parking lot is to be provided for the accommodation of fifty automobiles at a time. This large-scale enterprise is to be conducted in an area in the City of Reading which we have twice had occasion to declare residential: *Thomas* v. *Dougherty,* 325 Pa. 525; *Long* v. *Firestone T. & R. Co.,* 303 Pa. 208. As stated in the majority opinion, the proposition here is "to erect a large one-story market house, with an adjacent hard-surfaced parking lot for . . . fifty automobiles".

The use of property for business purposes in a residential district constitutes a nuisance where it injuriously affects the health, safety, morals, or property values of those residing in the vicinity: *Nesbit* v. *Riesenman,* 298 Pa. 475. It is a matter of common knowledge, that a grocery, green goods and fish and meat market, of the type here involved, usually receives the great volume of produce it requires daily during the night and early hours of the morning, when the store is free of customers, and the merchandise can be carried in and arranged for later display and sale. For the same reason, refuse must be removed during the night or at an early

hour. The parking and loading and unloading of the automobile trucks are noisy and disturbing at a time generally set apart for rest and quiet. This result is not speculative, as the majority states, but is commonly known as unavoidable and essential to the efficient management of a large retail establishment of the kind here contemplated. No amount of care can prevent the irritating noises incident to the unloading of heavy cases, crates and the like, and the emptying of metal garbage cans into disposal trucks. The usual attributes of "peace and quiet" in a residence district would be completely destroyed. Property values for residential purposes in such a neighborhood would be bound to shrink.

It is proposed to operate this store two or three nights a week until nine o'clock. The glare from the lights, and the insects attracted thereby, will be a constant source of annoyance and discomfort to the residents of the vicinity. While it would be possible to operate the store without strong lights, the owners would not wish to do so because of the need for such light and advertising effect. The noise of many people entering and leaving the market would at such an hour constitute an interference with the quiet of the neighborhood. With respect to the noise of crowds we said in *Edmunds* v. *Duff*, 280 Pa. 355, 366: "Where, as here, the question is one of interference with the enjoyment of private homes by reason of noises, attraction of large crowds, or the operation of a business or industry tending to render the immediate community a less desirable place in which to live, the resulting injury is such as necessarily affects practically all persons who happen to be living in the immediate neighborhood and are nearest to the source of annoyance . . ."

The parking lot to be operated in conjunction with the store for the accommodation of the automobiles of customers will constitute another source of damage to property values in the district and disturbance to the residents. A parking lot has many of the characteristics

of a gasoline filling station, which, as is firmly established by the cases and admitted by the majority, is a nuisance per se in a residential neighborhood. The presence of exhaust odors, monoxide gas, noise of starting and stopping, dust, glare of headlights at night, rumble and vibration of heavy trucks, and backfire explosions from their engines are some of the reasons for our decisions that such a business injuriously affects the health and comfort of the residents of the vicinity and lowers the market value of their property for residential purposes. The same is true of a parking lot, with reference to which we said in *Todd* v. *Sablosky*, 339 Pa. 504, speaking through Mr. Justice BARNES (p. 511) : ". . . we are satisfied upon careful examination of the record and consideration of the usual incidents of the operation of such enterprise, that the parking lot would tend to injuriously affect the health and comfort of plaintiffs. The noise of motors starting and running in low gear, and blowing of horns and the reflection of bright headlights after dark would be offensive to the residents of the neighborhood, and these disturbances could not be eliminated by even the most careful management." These same conditions would attend the operation of the proposed super-market, with the possible exception that the crowd leaving at night would not be so large or so late as that leaving the theatre in the cited case. This is insufficient ground for distinguishment, in view of defendant's manifest interest in attracting to its market the largest possible number of persons. If the lot were enjoined and the store were permitted, as was done in the *Sablosky* case, the congestion in the streets would produce the same, if not more serious, consequences.

Defendants assert that the super-market will be no more damaging than the theatre and stores which in the *Sablosky* case were held not to violate a restrictive covenant against nuisances. This argument overlooks the fact that there the property upon which the busi-

nesses were to be carried on lay in a commercial, not a residential, district (*Todd* v. *McLaughlin,* 337 Pa. 431), and that a use of property constituting a nuisance in a residential district may be unobjectionable in a business district: *Ladner* v. *Siegel,* 296 Pa. 579, 584. This was also the case in *Breinig* v. *Allegheny Co.,* 332 Pa. 474, cited by the majority, though that case did not involve the question of nuisances.

The other cases cited by the majority do not seem to me to embrace situations comparable to that now before this Court. In determining what constitutes a nuisance in a residential district, each case must be decided on its own facts (*Pilling* v. *Moore,* 306 Pa. 406, 410; 39 Am. Jur., p. 298). Where the Chancellor, affirmed by the court en banc, both of which are more familiar than we with the locality and with the effect the operation of such a super-market would have therein, having weighed the testimony and given it careful consideration, concludes that the proposed enterprise will harmfully affect the residents of the neighborhood and will depreciate the value of their property, we should be loath to enter an order of reversal (*Duty* v. *Vacuum Oil Co.,* 317 Pa. 15, 21). As we said in *Calvary Church* v. *Jones,* 322 Pa. 77, 80: "The question as to whether a particular locality is commercial or residential in character, and whether a proposed use of land within it would constitute an unreasonable infringement upon property rights of the inhabitants, is a matter which lies within the sound discretion of the court below, and its findings, when supported by evidence, will not be interfered with on appeal in the absence of manifest abuse of discretion: [Citing cases]." This is particularly true where our reason for doing so is based, not upon a different conception of the result of decided cases, but on a difference of opinion as to a factual situation to occur in the future, namely, the manner in which the super-market when built will be conducted, and the effect it will have upon the surrounding community.

While courts are reluctant to interfere with the use of a person's property for otherwise legitimate purposes (*Huckenstine's Appeal,* 70 Pa. 102), where it is clear, as it seems to me to be here, that the proposed use will result in harmfully affecting the surrounding properties in reducing their market values for residential purposes, and injuring the health of the owners and the tenants, we should not hesitate to prevent the mischief before it arises (*Eckels* v. *Weibley,* 232 Pa. 547, 550), rather than to wait and enjoin it after its effects have occurred, as the majority would do.

For these reasons, I would affirm the decree of the learned court below.

Chief Justice MAXEY and Mr. Justice PATTERSON join in this dissent.