## Angelotti et al. v. O'Brien

*Damian J. McLaughlin*, for plaintiffs.
*William W. Knox*, for defendant.

Modified Adjudication by BRAHAM, P. J., fifty-third judicial district, specially presiding, December 7, 1945.—The adjudication filed on July 16, 1945, enjoined the defendant from operating a turkey-raising farm on the edge of the fine suburban section of Erie in which plaintiffs reside. When the case came before the court en banc on exceptions defendant complained that the injunction had been granted at a time when his turkeys were small and comparatively inoffensive and that a rehearing at a time when the turkeys were mature would demonstrate plaintiffs' fears of bad smells, loud noises and vermin, to be groundless. Plaintiffs agreed to a rehearing on this basis, and accordingly additional testimony of both plaintiffs and defendant was heard on October 23, 1945.

Our adjudication and decree awarding an injunction were based upon the evidence of experienced turkey raisers who testified that the raising of large numbers of turkeys in a small space is necessarily productive of offensive odors, loud and disturbing noises and quantities of flies and vermin, by which people living nearby are bound to be disturbed.

The contrary evidence produced by defendant can largely be explained as the evidence of turkey raisers themselves who are reconciled to putting up with the unpleasant features of their own business.

This fundamental view of the case has been strengthened by the additional testimony. Plaintiffs' original

case was based upon the evidence of professional turkey raisers, because the plaintiffs themselves had not yet experienced the bad features of the business, all the witnesses agreeing that when the turkeys are small not much offense is given. Upon rehearing the significant evidence comes from plaintiffs and other persons who live near defendant's pens. They say defendant's operations have been accompanied by a stench so strong as to deprive them of the full use of their homes, the disagreeable gobbling of turkeys and greatly increased numbers of flies and rats.

Plaintiffs' witness who lives closest to defendant's pens is Lyle Walker. He has occupied his present home for 16 years. The back of his lot is only about 180 feet from the site of defendant's operations. He says that, whenever during the summer and fall of 1945, the wind has been right, the smell of defendant's pens has been so overpowering as to drive his family and their friends out of his yard. He noted 12 days in August when conditions were so bad it was necessary to go indoors and close doors or windows. He testified also concerning the disagreeable gobbling and the presence of greatly increased numbers of flies and rats since defendant began his operations.

Mr. Walker's experience is paralleled by that of Mr. and Mrs. H. F. McChesney who live on the other side of defendant's property with their lot also sloping down toward defendant's pens. Mr. McChesney says that defendant's pens are about six hundred feet from his house but that three or four times a week, depending upon the wind and the dampness, he and his family have been disturbed by bad odors. The McChesneys bought their home about the middle of August. Defendant claims they have "come to a nuisance" but it should be pointed out that the injunction of this court against the operation of defendant's business was dated July 16th.

There is evidence of Mr. Walker, Mr. McChesney and Mrs. Elizabeth C. Conway that the bad odors from defendant's pens were noted at Dr. Stoney's home, which is across the street from McChesney's.

Mrs. Margaret S. Powell, whose home is across the street from Walker's and thus is separated from defendant's pens by the full length of Walker's lot, testified to being driven into her house by the odors and noise from defendant's operations. Mrs. Harriet D. Klein owns the property marked on the map as Lot 4 in Block D. It is considerably farther from defendant's pens than that of any other witness, yet she describes clearly and convincingly how disturbing was the bad odor.

Of particular significance is the evidence of Mrs. Amelia Cooper, who lives directly across Peach Street from defendant's pens. She testified that she was disturbed by the odor only when the wind was in the east but that the flies have greatly increased since defendant opened up his business. Mrs. Cooper is not a plaintiff.

Defendant's evidence at rehearing consisted of the testimony of his sister, Miss Elizabeth O'Brien, who keeps house for him, a friend of the sister named Charles I. Blake, a State inspector named Louis A. Specter and defendant himself. The O'Briens say there were no bad smells, no noise, no rats, no flies. Mr. Blake says he noticed none. Mr. Specter says he never noticed any bad smell from defendant's pens; but admits he lacks entirely a sense of smell. He inspected defendant's pens only once. That was on the day of trial and at defendant's request. He found things clean and the droppings limed. This discloses a fundamental contradiction in defendant's case. He admits that the presence of unlimed droppings would produce bad odors and at the original hearing expressed his determination to lime the droppings daily and to remove them daily, but at rehearing he says he limed the droppings 10

times in a period of six months and now removes them only weekly.

A similar discrepancy appears in defendant's attitude toward the Wurst turkey farm which lies about one thousand feet farther south along Peach Street from defendant's pens and a similar additional distance from all the plaintiffs. At the original hearing defendant endeavored to show that plaintiffs had never smelled any bad odors from Wurst's and therefore would probably never smell any from defendant's pens. Since the original hearing it appears there have been complaints about Wurst's pens. Now defendant asks us to conclude that the bad odors detected by plaintiffs and plaintiffs' witnesses came from Wurst's. According to the evidence before us Wurst has failed to lime and to remove the droppings, precisely the points at which defendant has failed.

Defendant makes much of the contention that, since Mr. Specter, the State inspector, had no complaints about a nuisance on defendant's lands, none existed there. This is without weight. Plaintiffs have elected to bring their difficulties direct to this court of equity. This is their right.

The rehearing in this case eliminates any difficulty which may have been inherent in our adjudication under the doctrine of Essick et al. v. Shillam et al., 347 Pa. 373. The full implications of the operation of defendant's turkey pens in the residential neighborhood where plaintiffs live are now apparent. The experience of other turkey raisers has been corroborated by the experience of defendant. His operations, where they are located, constitute a nuisance.

When the adjudication was handed down the worst of the turkey growing season of 1945, from the standpoint of the neighboring property owners, was ahead of us. The injunction was designed to assure to such of them as were plaintiffs the full and undisturbed occupancy of their homes to which they are entitled

under the law. The course which the case has taken has deprived them of their rights for one season but has made more clear the actual invasion of their rights by defendant.

Under these circumstances it is not necessary to press for an immediate cessation of defendant's operations. The end of the turkey raising season is now only a few weeks off. With the coming of cold weather families are more commonly in their houses and the bad smells are therefore less obnoxious. Defendant should therefore be allowed to complete this season's business.

After full consideration of this case we make the following

### Findings of fact

1. The findings of fact appearing in our original adjudication and numbered one to fourteen are each hereby adopted and renewed.

2. Actual experience since the filing of the adjudication has demonstrated that the operation by defendant of his turkey raising pens at the place where they are now located has caused noxious odors, loud and disturbing noises and a great increase in flies and vermin, which have deprived the plaintiffs of the full and undisturbed enjoyment of their properties to which they are entitled.

3. The operation of defendant's turkey raising pens, where they are now located, constitutes a nuisance.

### Conclusions of law

1. The two conclusions of law appearing in our adjudication are each hereby adopted and renewed.

### Decree nisi

And now, December 7, 1945, upon consideration of the foregoing case it is ordered, adjudged and decreed as follows: Defendant is enjoined and restrained from operating a turkey raising farm on lots numbered one,

two and three of Chestnut Hills subdivision and the immediately adjacent lands, this decree to become effective on January 10, 1945. The costs are placed upon defendant. This decree shall become absolute unless exceptions are filed hereto within 10 days.