## Colonial Salvage and Scrap Co. v. Zoning Board of Adjustment

*Ben S. Altshuler* and *Ralph Schwartz*, for petitioner.

*David Berger*, City Solicitor, and *Lenard L. Wolffe*, Assistant City Solicitor, for respondent.

CRUMLISH, J., January 14, 1957.—This matter comes before us on certiorari from a refusal of the zoning board of adjustment to grant an application for a certificate of adjustment for the use of premises located on the southwest corner of 10th Street and Washington Avenue, as a scrap metal yard.

The property is zoned "General Industrial". In such a zoned area, the operation of a scrap metal yard is a permissible use should the zoning board of adjustment issue a certificate after public hearing: Section 14-503(2)(b), of the General Code of Ordinances of the City of Philadelphia. Such a use is not a matter of right in a general industrial area, as it would be in an area zoned "Least Restricted District," under section 14-601(aa) of the General Code.

It is our function on certiorari to review the evidence given before the zoning board and the decision reached by it. Under the Act of May 6, 1929, P. L. 1551 sec. 8, 53 PS §14759: "The court may reverse or

affirm, wholly or partly, or may modify, the decision brought up for review." We may hear evidence, and make whatever decision is just and proper under the evidence and applicable rules of law: Pincus v. Power, 376 Pa. 175, 179 (1954).

The physical features of the area around 10th Street and Washington Avenue, as well as the character of the premises here involved should be clearly pictured to understand the nature of the question involved in this appeal.

Washington Avenue is about 120 feet wide. It has four sets of railroad tracks on it. Freight trains operate along the street daily. Some deisel engines are used, and some steam engines are in operation. No passenger service is provided by the railroads along this route. It is strictly for the hauling of freight.

The board found "that the northwest corner and extending through to 11th Street is a five-story industrial structure used for clothing and paper box manufacturing. The northeast corner is a two-story row garage structure used as an auto body and repair shop. The southeast corner is a one-story row garage structure. Remainder of block to west on Washington Avenue are two and three-story row dwellings with vacant ground on southeast corner 11th Street. South of subject property on 10th Street are three-story row dwellings with church building on northwest corner Ellsworth Street. Opposite subject property are three-story row dwellings with rear of an industrial structure that fronts on Washington Avenue in center of block. South of subject on Alder Street are one-story row dwellings. On the opposite side of Alder Street are one and two-story row dwellings and garage structures."

Appellant purchased the property located on the southwest corner of 10th Street and Washington Avenue, where formerly a coal yard had been in operation.

From the testimony presented, there can be no doubt but that the operation of applicant's business would not be as harmful to the neighborhood as that of the coal yard business. The operation of the coal yard, however, was a nonconforming use and could not be ousted.

Approximately 100 citizens of the locality signed a petition addressed to the zoning board of adjustment, requesting that permission not be granted for a scrap yard at the location sought. Objection was made also by Rt. Rev. Msgr. Louis Risha, Pastor of Saint Maron's Roman Catholic Church, located at 10th and Ellsworth Streets, Philadelphia.

The action of the zoning board of adjustment was unanimous in refusing an adjustment certificate for the use of the property for a scrap metal yard. Applicant requested a rehearing which the board denied.

Summarizing the conclusions of law, on the basis of which the board refused to grant applicant's certificate, we find the following reasons assigned. The board found the proposed use would be contrary to public interest in that it would be offensive to neighbors because of dust and dirt, because of noise, because it would constitute a least restricted use in a mixed general industrial and residential district; were permission granted to use this property as a scrap metal yard it would act as an opening wedge for other least restricted uses to be sought in a mixed general industrial and residential district; that residents were entitled to have zoning ordinances strictly construed; that the health, morals, safety and general welfare of the immediate neighborhood would be affected if the application were granted.

At the appeal hearing before the court of common pleas, the character of the neighborhood in the vicinity of 11th Street and Washington Avenue was shown to be industrial, with Penn Paper Company on

one of the corners, engaged in processing paper for making cardboard out of it, bringing paper in by trucks and by rail. The first residence south of applicant's property was shown to be occupied by a man who has banana pushcarts. He stores his carts in his cellar, and also keeps some on the pavement in front of applicant's property. There was testimony to the effect that the machine shop on the southeast corner of 10th and Washington Avenue has about 100 employes. The garage on the northeast corner undertakes repairs of fenders and automobile truck work.

A careful review of all the evidence adduced in this matter indicates strongly that the board did not take a realistic view of the neighborhood, and was perhaps unduly influenced by the number of protestants who appeared at the public hearing.

As Mr. Justice Bell stated, in Silverco, Inc., v. Zoning Board of Adjustment, 379 Pa. 497, 502 (1954): ". . . the fact that over 1000 protestants signed a petition for revocation would not, of itself, be sufficient because, as this Court said in Lindquist Appeal, 364 Pa. 561, 565, 73 A. 2d 378: 'It is clear that a board of adjustment does not properly exercise its discretion if it considers the number of protestants rather than the nature and quality of their objection.'"

Turning to the substance of the protestants' objections, we find first: "(1) This scrap yard would be a blight on our Community and bring about neighborhood deterioration." The evidence discloses that applicant company has already taken down four coal silos that extended high in the air, and has started construction of a cement block wall which will hide its operations from the sight of passersby and will effectively protect the neighborhood from effects of its operation. There is every reason for a conclusion opposite from the first objection stated, i.e., that appli-

cant's scrap yard will eliminate the unsightly coal yard that was a blight on their community and will aid in preventing neighborhood deterioration.

The second objection of the protestants: "(2) It would bring all sorts of scavengers to our community." The testimony establishes that applicant company now operating at Front and Reed Streets, Philadelphia, purchases old scrap metal from plants, processes it and sends it out to mills for reuse. In the words of Nicholas Colaianni, one of the owners: "This is not a junk yard. We don't have rubbish or paper there." There is no basis for the protestants' apprehension that scavengers will infiltrate into their community because of applicant's business, since from the nature of its operation, it nowhere appears that there is any interest on the part of applicant of purchasing bits of scrap metal from private gatherers.

Protestants next state: "(3) If granted a permit it would be a fire hazard." This conclusion is not substantiated by testimony. Nor did the board find it to be so. There is positive testimony to show that any burning of metal will be done in such a way that there will be no danger from flying sparks, and under such controlled conditions that no fire hazard will result from the operation of an acetylene torch. Most of the company's work will be done by electricity.

The fourth reason: "(4) The owners of proposed scrap yard have already started work in the construction of a cement black wall before being granted a permit," is so obviously not a valid objection that no discussion need be had thereon.

Referring now to the conclusions of law reached by the board, they are not substantiated by the testimony.

There is ample evidence that this business operation will not create any unusual dust and, in fact, there will be far less dust than accumulated from the opera-

tion of the coal yard. Expert testimony was given that rust dust is of such a heavy character that nothing short of hurricane winds will disturb it or send it flying through the air. There is nothing to show that the operation will create excessive dirt. Should the land lie idle, there would still be an average amount of dust and dirt. It would appear, therefore, that the board abused its discretion in arbitrarily ignoring expert testimony, making its own contrary findings and concluding the proposed use would be offensive to neighbors because of dust and dirt.

The board's conclusion that the proposed use would be offensive to neighbors because of noise, is evidence that the board adopted a very unrealistic attitude toward the present character of the neighborhood and the kind of "noisy" businesses presently in operation there. For example, freight trains travel along Washington Avenue daily. There is usually substantial noise coincidental with such operation. On the northeast corner of 10th Street and Washington Avenue is an auto body and fender repair shop, a "noisy" business. Paper is transported along Washington Avenue by rail and truck to the Penn Paper Company a block away from applicant's premises. It is equally evident the board ignored the testimony of applicant's expert witness that there would be a minimum of noise from the operation of applicant's proposed use; with the high wall around the premises, doubt was expressed that any noise would be heard by those outside the yard. The board found as a fact that in the operation of a pressing machine there is little noise or vibration. There are other findings dealing with vibration, but no other findings concerning noise. It is an inescapable conclusion that the board manifestly abused its discretion in refusing applicant's request on the foregoing basis.

The conclusion of the board that the neighbors would be offended because the proposed use would constitute a least restricted use in a mixed general industrial and residential district, is form without substance. That fact, per se, does not constitute valid exercise of its discretion. The board's duty is to look to the quality of such objection, and draw its conclusions accordingly: Lindquist Appeal, supra.

Anyone who is familiar with the neighborhood around 10th Street and Washington Avenue knows there has been a steady decline in residential area, and a comparable increase in general industrial endeavors. The zoning authorities have recognized the changes and have zoned the area as a "General Industrial District". One of the regulations under this classification is as follows:

"*§14-503(3) Prohibited Uses:* The specific uses which are prohibited in this district shall be the erection, construction, alteration, or use of buildings or premises and/or land for:

"(a) Dwellings, except such as are for the residence of a caretaker, watchman, or custodian on the same lot with the principal use to which it is accessory and are located at least 10 feet from any other building."

As we interpret the foregoing restriction as it affects the area we are here considering, there is no likelihood that the residential district will increase in the vicinity of 10th Street and Washington Avenue, but on the contrary the area will be marked by a steady decline of residential occupants. Applicant's request is in keeping with the tenor of the neighborhood presently, and in view of the testimony, his use of the premises will improve the appearance of his specific location.

It should not be lightly overlooked that this is not a request for a variance from an established zoning ordinance, but is, rather, an application for a permis-

sible use under the general zoning classification of the area. The board has not been asked to vary the terms of the ordinance for applicant, but to weigh the propriety of permitting the operation of the business in the proposed locality, which the board has authority to allow.

In view of the foregoing discussion, it is an inescapable conclusion that the board of adjustment abused its discretion by overlooking the positive testimony given by applicants and an engineering expert, and by making findings contrary to the facts, as disclosed by the evidence.

Concerning the board's conclusion of law that this would constitute an opening wedge for other least restricted uses in a mixed general industrial and residential district, the Zoning Code specifically grants the board the power to allow this least restricted use in an area such as this.

The city, in its brief, argues that while applicant may engage in a kind of scrap-yard business that will not injure the community, should he vacate the premises, the use will attach to the land and: "Although this appellant may handle only relatively clean junk, the next one will handle all kinds of junk. Once this use begins to expand, neither the board nor the court has any assurance that the number of presses or cranes will be limited to those which are presently in operation."

In Essick v. Shillam, 347 Pa. 373, 375, 379, 380 (1943), Mr. Justice Allen M. Stearne stated: "The court should not be impressed by plaintiffs' fears that the store will be operated in a manner likely to endanger their health and interfere with the comfort of their homes, because there is no evidence that such results are inevitable. It is, therefore, unreasonable to assume, as a matter of law, that the business of the

lessee cannot be conducted in an orderly and inoffensive manner." This case has been often cited as authority for the equities that govern a conflict between business and residential interests of a locality.

The issue in the Essick case, supra, was: "Will the construction of a supermarket, grocery and provision store, with a parking lot for its patrons in a predominantly residential district, constitute a nuisance as a matter of law, regardless of the manner of operation, where the proposed use does not violate building restrictions or zoning laws?" The Supreme Court refused an injunction against the erection of the proposed supermarket, and stated, at page 380: "The court cannot anticipate an improper use of the premises and sanction a restraining order founded upon surmise and speculation as to the future conduct of defendants."

In our opinion, the city envisions a condition for the southwest corner of 10th and Washington Avenue that has no present existence, and we will not speculate about future uses for the premises. Should the future use of the premises constitute a nuisance both in law and in fact, then equity will afford relief for the aggrieved neighborhood.

Under the evidence and the law, the refusal of the zoning board of adjustment to grant applicant's request for a certificate of adjustment was a manifest abuse of the board's discretion, and as such we hereby reverse the decision of the board and enter the following:

### Order

Appeal sustained.

Zoning board of adjustment is directed to issue forthwith a certificate of adjustment for the use of premises located on the Southwest corner of 10th Street and Washington Avenue, as a scrap metal yard.