Todd et al., Appellants, *v.* Sablosky et al.

Argued May 10, 1940.   Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*William S. Fenerty,* for appellants.

*Samuel D. Goodis,* of *Sundheim, Folz & Hirsch,* with
him *A. Balfour Brehman,* of *Gilfillan, Gilpin & Brehman,*
for appellees,

OPINION BY MR. JUSTICE BARNES, September 30, 1940:

The question presented on this appeal is whether certain buildings and a parking lot which defendants propose to construct fall within the prohibition of restrictive covenants contained in the deed to the premises.

The site of the proposed construction is in the Stenton section of Mount Airy, Philadelphia, and occupies the southern portion of a block bounded on the east by Blakemore Street, on the north by Gorgas Street, on the west by Sprague Street, and on the south by Vernon Road. On this land, which is now owned by the defendant Lillian Schultz, the defendants Abraham Sablosky and The Vernon Theatre Company intend to erect five modern stores facing upon Vernon Road, and a motion picture theatre accomodating 1,000 persons, which will have an illuminated facade and entrance at the northeast corner of Vernon Road and Sprague Street. The parking lot will have a capacity of 650 automobiles and is to be located at the rear of the stores and theatre, for the exclusive use of their patrons. Its entrances will be upon Sprague Street and Vernon Road. An agreement of sale of the premises has been executed by Lillian Schultz, and upon its consummation by her conveyance of title to the other defendants the construction of the buildings and parking lot will commence.

Plaintiffs are owners of dwelling houses on Sprague Street which face the site of the proposed theatre and parking lot. This is the second action instituted by them to prevent defendants from carrying out their plan of construction. In the former proceeding they appealed from a decision of the Zoning Board of Adjustment granting permission to defendants to make the desired improvements. The court of common pleas sustained the action of the Board, holding that the structures would not constitute nuisances per se in the locality. This Court, upon appeal, affirmed the order of the court below. See *Todd v. McLaughlin*, 337 Pa. 431.

In the present proceeding plaintiffs filed a bill in equity to restrain the construction of the buildings and parking lot, on the ground that it would violate the restrictive covenants of the deed through which Lillian Schultz claims title to the land in question. A preliminary injunction was refused by the chancellor in the court below, and after further hearing, the bill was dismissed. Plaintiffs' exceptions to the adjudication were overruled by the court in banc, whereupon this appeal was taken.

As the character of this locality was conclusively established in the former action, and as it was there held that the proposed buildings and parking lot would not be nuisances per se, the only question before us is whether they are forbidden by the restrictions in the deed. For the purpose of this appeal it is conceded by defendants that the covenants are operative and that they inure to the benefit of plaintiffs.

The restrictions involved are these: "That neither the said premises nor any part thereof nor any house or building, erected or to be erected, thereon shall at any time hereafter be *used or occupied* as a tavern, barroom, saloon or other place or resort for the sale of spirituous or malt liquors, nor as an undertaker's establishment, nor as a stock yard, planing mill, carpenter shop, blacksmith shop, stone cutting yard, public or private hospital or sanitarium, nor for carrying on any manufacturing or other business causing offensive smells or *injuriously affecting the health or comfort of the neighborhood, nor for any purpose which for any reason would in law be a nuisance if established in a closely settled suburban locality.* . . . And subject to the further restrictions that no *public garage* shall be erected on the above described premises. . . ."

Upon examination of these restrictions it is apparent that the stores and theatre which defendants intend to construct are not among the business establishments specifically excluded from the premises; nor may the

parking lot be regarded as a "public garage" *(Breinig v. Allegheny County,* 332 Pa. 474, 484). Consequently, to be prohibited by the covenants, they must fall within the general restrictions, and it must be shown that they would injuriously affect the health or comfort of the neighborhood, or that they would be nuisances if established in a closely settled suburban locality.

In considering the effect of the general restrictions it must be borne in mind that such broad limitations upon an owner's use of his property are to be strictly construed. In *St. Andrew's Church's Appeal,* 67 Pa. 512, we said (p. 520) : "Certainly covenants of this nature which restrain a man in the free enjoyment of his property, are not to be extended by implication." And see *Crofton v. St. Clement's Church,* 208 Pa. 209; *Phillips v. Donaldson,* 269 Pa. 244. However, the purpose of such covenants is to confer upon the persons benefited rights superior to those of the general public to enjoin nuisances, and so long as the restrictions are of substantial value to them they will be enforced in equity : *Hunter v. Wood,* 277 Pa. 150, 152.

We think it is clear that the covenants in the present case were not intended to prevent *any* commercial use of the premises. In *Hibberd v. Edwards,* 235 Pa. 454, it was stated, referring to similar provisions in a deed, (p. 457) : "The restriction above quoted is not a residential restriction—limiting the property to residential uses, nor is it intended to be, but to guard and protect residences and inoffensive business places from the annoyance, discomfort and inconvenience of offensive establishments, such as are enumerated and others of *like character.* And in applying the restriction to trades, occupations and establishments other than those specifically prohibited [it] must be given a reasonable and fair construction."

Thus, while it is true that "Any other use of a property than for residential purposes, may be, and at times is, an annoyance to dwellers in the vicinity," covenants

of this type cannot be construed to prevent the establishment of any business offensive to some of the plaintiffs unless it falls within the class of uses prohibited. See *Houghton v. Kendrick*, 285 Pa. 223, 226.

The chancellor, who made a personal inspection of the locality and heard the testimony of the witnesses in the court below, has found as a fact that the stores and theatre contemplated by defendants would not affect injuriously the health or comfort of plaintiffs. His finding is of great weight with us, and appears to be amply supported by the evidence. "In this class of cases the issuance of an injunction 'is a matter resting in the sound discretion of the court below, and we will not interfere unless that discretion is manifestly abused'": *Richard v. Weiser*, 329 Pa. 203, 205. And see *Nesbit v. Riesenman*, 298 Pa. 475; *Calvary Church v. Jones*, 322 Pa. 77; *Pennell v. Kennedy*, 338 Pa. 285.

The stores in question will not face the properties of plaintiffs and no proof has been offered that the businesses to be conducted therein will be of a character injurious to the health or comfort of the community. The bill avers that defendants intend to erect a "supermarket" on Sprague Street adjacent to the theatre, but there is no evidence to support the averment. Plaintiffs' allegation in the bill that such a market, if established, will "probably" be conducted in an offensive manner is purely conjectural and argumentative, and for this reason it required no specific denial by defendants in the answer.

The proposed theatre will be of modern design and construction. Its walls will be soundproof and the marquee lights will be placed so as to cast no glare upon plaintiffs' dwellings. Plaintiffs' principal objection to these buildings is that they will draw large crowds to the community and that automobiles will be parked there in such numbers that its residents will be deprived of access to their homes. There is nothing in the record, however, to indicate that this theatre will differ in any

way from the many quiet and orderly motion picture houses located throughout the residential districts of Philadelphia and its suburbs.

The land upon which defendants intend to construct their stores and theatre has been designated by the Zoning Board of Adjustment as an "A" Commercial District. In the same block, on the east side of Sprague Street, there is a plumbing shop. A public garage is located on the northwest corner of Vernon Road and Sprague Street opposite the site of the proposed theatre. On the southwest corner is a vacant lot upon which is posted a sign advertising "stores sites." On the south side of Vernon Road facing the plot upon which defendants desire to erect their stores are residences, the offices of a doctor and a dentist, and a beauty shop. A drugstore is at the corner of Vernon Road and Blakemore Street. The Stenton station of the Philadelphia & Reading Railroad is situated northeast of Blakemore Street, near Gorgas Street, and in that vicinity there is a freight siding. A coal yard and trestle occupy a portion of the block from Sprague Street to the railroad and from Gorgas Street north to Sedgwick Street. Chew Street, which is but two blocks from the homes of plaintiffs, contains many business establishments. The community was described by the chancellor as "a residential locality which is not only located on the fringe of a commercial district but which has also been invaded by some commercial activity."

Considering the character of the community as a whole, we cannot say, as a matter of law, that defendants' stores and theatre will affect the health or comfort of its residents, and we are of opinion that they would not constitute nuisances per se in a "closely settled suburban community." The latter phrase obviously refers to a thickly populated, predominantly residential district on the outskirts of a large city, in which neighborhood stores and theatres similar to those here involved are customarily found.

.

Plaintiffs' properties are located in a district classified as "D" Residential, in which the erection of public auditoriums is permitted. Although such structures attract large numbers of people, far in excess of those which may be expected to patronize defendants' motion picture theatre, we have held that they are not nuisances per se even when located in predominantly residential districts. See *Sheets v. Armstrong*, 307 Pa. 385.

The case of *Edmunds v. Duff*, 280 Pa. 355, cited by plaintiffs, bears no resemblance to the present case. There the defendants were restrained from erecting an amusement park in a residential community. The attractions were to include an open-air theatre, picnic pavilion, aerial swing, carousel, dancing pavilion, rifle range, playgrounds, restaurants, lunch counters and electric fountains. Such an establishment, of course, is not to be compared to a relatively decorous and quiet neighborhood theatre. In *Finley v. Glenn*, 303 Pa. 131, the restrictions involved prohibited the operation of *any* commercial enterprise upon the premises, which distinguishes that case at once from the one now before us.

As the covenants in the present case do not forbid the erection of commercial structures but merely impose limitations upon the *use and occupancy* of the premises for certain commercial purposes, the injunction against the erection of the stores and theatre was properly refused because they are not buildings of such a type that their normal use for the purposes intended would necessarily violate the restrictions. If plaintiffs' fears regarding their future operation should be realized, adequate relief in equity will be available to them.

However, we are satisfied upon careful examination of the record and consideration of the usual incidents of the operation of such enterprises, that the parking lot would tend to injuriously affect the health and comfort of plaintiffs. The noise of motors starting and running in low gear, and blowing of horns and the reflection of bright headlights after dark would be offensive to the

residents of the neighborhood, and these disturbances could not be eliminated by even the most careful management.

The parking lot would be in use not only during business hours by customers of the stores, but also throughout the evening by patrons of the theatre. Large numbers of cars leaving the lot simultaneously at the end of each performance would produce noise and congestion to disturb the rest of the community. In this respect the present case differs from *Phila. Fairfax Corp. v. McLaughlin*, 336 Pa. 342, where the parking space was to be used only by residents of an apartment house; and *Breinig v. Allegheny County*, supra, where the lot was open only during business hours to those patronizing a single store. In the latter case the affected area was almost exclusively commercial, and there was no objection that the lot would interfere with the comfort of the residents.

Although the covenants do not expressly forbid the *construction* of the proposed parking lot, the probability of injury to plaintiffs by its normal use for that purpose is sufficiently strong to justify the intervention of equity at this time. We stated in *Edmunds v. Duff*, supra, (p. 366) : "Although true an injunction will not be granted where the injury is based merely on apprehension as to future damages, yet, if it be shown reasonable grounds exist to believe the proposed construction will result in a nuisance, and it is reasonably certain the health or comfort of complainants will be harmed by the threatened act, the court will decree immediately to restrain such acts." See also *Ladner v. Siegel*, 293 Pa. 306, 311.

The decree of the court below is modified to restrain the appellees from erecting and operating upon the premises the proposed parking lot in conjunction with the stores and theatre; as so modified, the decree is affirmed. Costs to be paid by appellants.