## Beck v. Frost

*I. Finkelstein,* for plaintiffs.

*Bernard M. Borish,* for defendants.

KELLEY, J., May 2, 1960.—Plaintiffs own a private residence located on a tract of land which is subject

to a deed restriction prohibiting the erection of anything other than private residences and private garages. They seek a preliminary injunction to restrain defendants, who are deedholders to five contiguous lots in the same tract, from constructing two 17-unit apartment buildings thereon in apparent violation of the restriction.

Hearing was held and the chancellor has made the following:

### Findings of Fact

1. The tract involved herein is known as Castor Cottman Gardens Addition. It is located in the northeast section of Philadelphia and is rectangular in shape, comprising 165 building lots bounded by Cottman Street on the northeast, Summerdale Avenue on the southeast, the 1100 block of Friendship Street and the north driveway of the 1000 block of Friendship Street on the southwest and the west driveway of Algon Avenue on the northwest.

2. All property owners in the tract, save those who own Cottman Street frontage which is specifically excluded, hold deeds subject to a restrictive covenant which reads, inter alia:

". . . subject to the following restrictions nothing other than private residences, private garages shall be erected on any of the lots not more than one private residence, private garage to each twenty-five feet thereof . . ."

3. In November 1959, lots 897 to 901, 7118 Algon Avenue, which abut one another and which comprise the extreme southwest corner of the addition, were owned by Frederick P. Meuller, Jr. They were improved to the extent that a two story single house had been built thereon. This house was erected prior to the creation of the instant restriction.

4. On November 2, 1959, an agreement of sale was executed between Meuller and defendants. The agree-

ment recited therein the building restriction and defendants became the equitable owners of the land subject to the restriction. The consideration for the property was $24,000.

5. Sometime in last November 1959, defendants erected a sign upon the land, which sign was approximately three feet by five feet in size. The sign read as follows:

"On this site will be erected three buildings containing multiapartments. For information, Meyer D. Wolfson, Agent, WA 4-3277."

The sign was removed late in December 1959.

6. On February 29, 1960, plans for the construction of two apartment houses of 17 units each were filed by defendants with the Department of Licenses and Inspections of the City of Philadelphia. These apartment houses were to be 32 feet by 98 feet each.

7. On March 1, 1960, defendants settled for the property and took title thereto from Meuller.

8. During the period between the execution of the agreement of sale and the settlement, defendants received no notice of objection to the proposed construction by reason of the sign described in paragraph 5. In fact, the residents of the addition whose properties immediately abutted defendants' lots encouraged the proposed construction.

9. On March 25, 1960, defendants started leveling and excavating the lots preparatory to starting construction of the apartment buildings, said leveling and excavation being to either side of the existing dwelling house described in paragraph 3.

10. By registered letter dated Friday, March 25, 1960, plaintiffs informed defendants of the building restrictions and notified them that unless construction was halted a bill in equity would be filed with the court. The letter was received by defendants on Satur-

day, March 26, 1960, although not actually read until Sunday, March 27, 1960.

11. As of the date they became informed of the contents of the letter, defendants' actual progress included only a leveling and a slight excavation of the section of the lots in question immediately to one side of the already existing house. That house was still standing as of that date.

12. A complaint in equity seeking the instant injunction was filed on Tuesday, March 29, 1960.

13. Defendants proceeded with construction, however, and as of April 8, 1960, the date of the first hearing on the matter, had already erected the first story of one of the two proposed buildings and had removed the upper level of the house already there.

14. Plaintiff resides at 1121 Friendship Street within the restricted tract and approximately one half square from the lots in question. His home does not violate the restriction. He purchased this home in December 1959.

15. Of the 165 lots which comprise the tract, 13 have been developed in violation of the limitation restricting structures to private residences. These violations have taken the form of duplex apartment buildings; i.e., four one-floor apartments in a semidetached structure. One of the 13 is a triplex, the basement also being used.

16. Each such structure in violation of the restriction nevertheless conforms physically to the general tenor of the private-residence residential neighborhood, in that the appearance of each duplex building matches the appearance of the semidetached, two-story completely private residences that have otherwise been built.

17. Other violations of the literal terms of the restriction include only the fact that certain of the build-

ing lots have been developed with a frontage of slightly less than 25 feet. Such frontages range between 24 feet, six inches and 24 feet, 11 and one half inches.

18. The character of the immediate restricted area is that of a quiet, well kept, private residential area. No building thereon is more than two stories in height and there are garage facilities for almost each residence that has been constructed, including the aforementioned duplexes.

19. The character of the surrounding neighborhood is also private residential, although structures of a nonprivate residence type include a synagogue and Hebrew school building immediately adjacent to the particular tract in question and several multi-unit apartment buildings adjacent to the northeast boundary of the entire restricted area.

20. The tract in question is zoned C residential by the appropriate zoning ordinance. This classification permits multiple dwellings.

## Discussion

In the instant situation, plaintiffs, who live only a half block from the site in question, seek the relief of a preliminary injunction to enforce a building restriction created in 1928. A review of the principles involved in such matters shows that restrictions on the use of land are not approved by the law because they are an interference with an owner's free and full enjoyment of his property: Jones v. Park Lane for Convalescents, 384 Pa. 268. In this light, nothing will be deemed a violation of a restriction that is not in plain disregard of its express words, and every restriction will be construed most strictly against those seeking to enforce it, every doubt and ambiguity in its language being resolved in favor of the owner.

However, the particular language here involved has already been construed by our courts, and the term

"private residence" precludes the erection of apartment houses or duplex dwellings: Pehlert v. Neff, 152 Pa. Superior Ct. 84; Fox v. Sumerson, 338 Pa. 545; Taylor v. Lambert, 279 Pa. 514.

We are faced then with a situation wherein defendants have purchased real property subject to a building restriction of which they had knowledge and which, under the law, specifically precludes the use they seek to make. Because they cannot negate the restriction itself, they must, therefore, negate the proposed enforcement of the restriction.

Generally, equity will refuse to enforce building restrictions of the instant character where those who seek the injunctive relief are guilty of laches (Pehlert v. Neff, supra; Lavan v. Menaker, 280 Pa. 591; Drucker v. Russel, 279 Pa. 443; Coates v. YWCA, 245 Pa. 428; 12 A. L. R. 2d 397), or where the character of the neighborhood immediate to the restricted tract has changed so as to make impossible the accomplishment of that for which the restriction was designed: Rome v. Rehfuss, 391 Pa. 82; Daniels v. Notor, 389 Pa. 510; Katzman v. Anderson, 359 Pa. 280; Price v. Anderson, 358 Pa. 209; 4 A. L. R. 2d 1111.

Similarly, enforcement will also be refused where those who seek injunctive relief are estopped by their own prior violations of the restriction or by virtue of their own contribution to a change in character (Katzman v. Anderson, supra; Price v. Anderson, supra), or where the complainants have waived the right to enforce a restriction by virtue of having acquiesced in prior violations without complaint: Rome v. Rehfuss, supra; 28 LRA (NS) 711.

Because each of the above situations in itself may preclude injunctive relief, we shall discuss the applicability of each to the instant situation separately.

With regard to laches, defendants contend that plaintiffs have stood by and permitted defendants to

expend money in behalf of their proposed construction, and that it is impossible for equity to enjoin defendants without inflicting great injury upon them. To substantiate this contention, defendants point out that a sign had been on the property for approximately four weeks and apparently elicited no objections; that in the light of failure of response they took title to the property and expended substantial sums of money for construction, and that the existing building was demolished, excavation begun and some concrete footings poured before the receipt of notice that plaintiffs intended to enforce the restriction.

The credible evidence, however, establishes that the sign was removed in December 1959, that defendants did not take title until March 1, 1960, and that excavation did not begin until March 25, 1960, as of which date the existing structure had not yet been demolished. Further, on the same date, plaintiffs sent notice to defendants, which notice was received on March 26, 1960. As of March 27, 1960, the existing structure had not yet been demolished. The complaint was filed on March 29, 1960, only four days after excavation had begun, three days after notice was received by defendants and one day later than the earliest possible day on which it could have been filed, Monday, March 28, 1960.

Before the doctrine of laches will interfere with equitable relief, there must be a passage of time and a resulting prejudice to defendants: Paull v. Paull, 384 Pa. 2. In the instant case, there was no appreciable lapse of time and thus no resulting prejudice to defendants. Plaintiffs took reasonably prompt action upon their discovery of the violation (Drucker v. Russel, supra), and did not stand silently by and witness the construction and use of a building in violation of the restrictive covenant: Lavan v. Menaker, supra, at page 596. Plaintiffs were not bound to

act upon the placing of the sign because defendants did not own the property at the time and could hardly have been then enjoined, because the sign did not clearly express the magnitude of the proposed violation, and, most important, because they were not bound to anticipate that defendants would violate the restrictive covenants in the deed until they actually did so: Drucker v. Russel, supra, at page 448.

A review of prior cases in this jurisdiction shows that any question of laches must be answered in the light of the facts presented by each individual case. Laches has been held not to have been established notwithstanding the passage of as much time as one month (Drucker v. Russel, supra), and nine months (Lavan v. Menaker, supra), while as short a period of five weeks did establish laches in Coates v. YWCA, 245 Pa. 426, where plaintiffs had actual knowledge that construction work was being done for that length of time before they initiated their complaint. Other cases show that laches has been established only where the passage of time had been lengthy: two years, Gatzmer v. St. Vincent School Society, 147 Pa. 313; and three years, Hohl v. Modell, 264 Pa. 516; Phillips v. Dunseith, 269 Pa. 251.

Further examination of situations in other jurisdictions shows that the period of time during which laches on the part of plaintiffs may prejudice defendants runs from the time that actual construction is begun, and not when plaintiffs may first have reason to suspect defendants' intentions: Mayes v. Hale, 82 Fla. 35, 89 So. 364; Allen v. Barrett, 213 Mass. 36, 99 N. E. 575; Storey v. Brush, 256 Mass. 101, 152 N. E. 225.

For example, in Rose v. Kesseseth Israel Congregation, 228 Minn. 240, 36 N. W. 2d 791, defendant congregation purchased land in 1946. In October 1946, a highly publicized dedication ceremony was held and

notoriety attended the fact that a synagogue was to be erected. A large, explicit sign was also posted at that time. In the spring of 1947 excavations were begun and it was not until May 1947, that neighbors sought an injunction to preclude the violation of a restrictive covenant which was created by the original grantor and which restricted the entire area to private residences. The congregation was allowed to build the synagogue because the particular lot on which it was to stand was excepted by the immediate grantor, but the court specifically stated that plaintiffs were not guilty of laches. These cases are in complete accord with the statement of our Supreme Court that plaintiffs are not bound to anticipate that defendants will violate restrictive covenants until they actually do so: Drucker v. Russel, supra. In this light, notice to the instant defendants immediately upon the beginning of excavation on the tract, and complaint filed within four days thereafter, preclude a finding that the instant plaintiffs have been guilty of laches and should be barred from injunctive relief thereby.

Defendants next claim that the proposed construction will be completely in conformity with the present character and use of the neighborhood, and that the actual land use of the neighborhood shows that its development has not been in accordance with the literal mandate of the restriction. They contend that enforcement of literal terms of a restriction will be precluded when there is a change in the character of the neighborhood. The law of this jurisdiction is in accord with this contention: "Where the exigencies of altered conditions in a neighborhood render a strict adherence to the terms of the restrictive covenant useless to the dominant tenement, or absurd, or futile, or ineffective to achieve the end desired, it would be an anachronism to interpose equitable relief in support of it" (Daniels v. Notor, 389 Pa. 510, 515) and the ques-

tion for the court is whether the facts before it support the applicability of this doctrine to the instant situation.

It is manifest that the original owner and covenantee of the tract sought primarily to prevent the utilization of the conveyed building lots as sites for certain industries and enterprises which are deemed offensive and noxious (slaughter houses, fertilizer or glue factories, bone boiling establishments) and to secure the development of the land into relatively spacious lots containing but a single private residence, and it is not clear to the court that the nature of the changes that have occurred within the restricted tract make it impossible to accomplish these objects for which the restriction has been designed: Daniels v. Notor, supra, at page 518.

The record shows that only 13 of the 165 lots comprising the restricted tract evidence violations of the restriction. These violations are apparent only if viewed from the interior of these particular structures. Externally they evidence no breach of the quiet, orderly and generally well maintained residential district. They are clearly not destructive of the integrity of the scheme of development throughout the entire restricted area, and they do not evidence such a change in character of the neighborhood as would indicate that the entire restrictive plan has been abandoned, (Bodek v. Sinclair Ref. Co., 28 Del. Co. 145), or as would render enforcement of the instant restriction anachronistic, futile or absurd. Nor can they be physically likened to the two 98 feet long, 17-unit buildings proposed by defendants, and defendants cannot contend, thereby, that they seek merely the right to conform their property to the properties already built up and in existence in the neighborhood.

An examination of prior cases reveals no precedent for holding that such a minute number of violations

constitutes such a change in the character of a neighborhood as will preclude injunctive relief, especially where the violations, small in number, are of such slight character and materiality. See Heller v. Seltzer, 67 N. Y. S. 2d 456. We are not faced with a situation where the locality has become *devoted* to other than private residential uses, nor are we confronted with the drastic degree of change which has precluded the issuance of an injunction in such cases: Orne v. Fridenberg, 143 Pa. 487, completely devoted to business use: Price v. Anderson, supra, stores, gas station and 400 car garage; Plarr v. Carroll, 56 York 42, heavy traffic on street which had become part of a State highway; Katzman v. Anderson, supra, 63 percent of tract devoted to nonresidential purposes, and Daniels v. Notor, supra, motels, guest house, power equipment store, garages, filling stations, restaurant and drivein. Pointing out the necessity of substantial change in this jurisdiction is Neff v. Gorman, 303 Pa. 186, where notwithstanding coal and lumber yards in a restricted area, and businesses just across the street, the erection of a filling station in violation of a restriction was restrained.

A review of cases in other jurisdictions bolsters a decision that the character of the neighborhood has not changed to the extent that injunctive relief should be denied. The fact that a few dwellings in an area of one-family residences were used for two or more families did not preclude enforcement of the restriction in Kiernan v. Snowden, 123 N. Y. S. 2d 895, and where 100 of 117 structures were in conformity with the restriction, the restriction was enforceable in Robertson v. Nichols, 92 Cal. App. 2d 201, 206 P. 2d 898. On the other hand, enforcement by injunction has been denied only in those cases where there has been a substantial change in character of the neighborhood such as where there were 41 apartment build-

ings of up to 38 units each within, and just adjacent to, the restricted area (Hurt v. Hejhal, 259 Ill. App. 221); where there were filling stations, a women's club building, grocery stores, a large laundry building, a market and apartment houses within the restricted area, and where industry, increased traffic, apartment houses, clubs and churches were brought into close proximity thereto (Oldham v. McPheeters, 203 N. C. 141, 184 S. E. 731); and where 12 houses in a 56-lot tract violated the restriction and filling stations, garages and stores touched upon and surrounded the restricted area: Jewett v. Albin, 90 Cal. App. 535, 266 Pac. 329.

With the foregoing discussion it is also apparent that plaintiffs are not estopped before the court by virtue of any contribution of their own to a change in neighborhood or by any waiver or acquiescence in prior violations.

Defendants next contend that the restriction can be of no substantial benefit to plaintiffs in the instant situation and for that reason pray that injunctive relief be denied. They point out the enthusiastic support they have received from the neighbors whose land immediately abuts defendants' property, the fact that the apartment buildings will be attractive in appearance, the fact that their erection may tend to eliminate a drainage problem that plagues the abutting neighbors and the fact that plaintiffs reside a full half block away. It is true that plaintiffs have alluded to no injury which they would suffer nor to any lessening of the physical enjoyment of their property because of the proposed violation of the restriction, nor have they averred that the restriction makes the use or enjoyment of their premises more satisfactory to their physical senses: Daniels v. Notor, supra, at page 519. We note, however, that they carry such a burden only when they seek to enforce the restriction not-

withstanding a changed character of the neighborhood: Daniels v. Notor, supra, at page 519; Rome v. Rehfuss, supra, at page 85. Because we have decided that the character of the neighborhood has not changed, any further discussion of the restriction's substantial value to plaintiffs is academic.

Finally, we are in equity, and we must balance the equities involved. Plaintiffs seek the benefit of a building restriction which they have not violated prior hereto, nor have they acquiesced in any one else's material violation. Defendants seek to violate the restriction. Defendants were fully aware of the restriction when they executed the agreement of sale, when they took title and when they began excavating. They did not seek the protection of a declaratory decree that the restriction was unenforceable before they expended any money. See Ellis v. Dubin, infra; Hitchner v. Gustainis, 56 D. & C. 545; Baederwood v. Moyer, 370 Pa. 35.

Defendants have presented no evidence to show that development of this land other than by way of their proposed apartment buildings would be economically unfeasible, nor have they introduced evidence to show that development for single family use is impracticable, in that there is no market for single family dwellings in this area. While defendants have been unsuccessful in showing a change of neighborhood substantial enough to alone preclude injunctive relief, they have not introduced evidence to show that the changes that have been wrought now make development for single family use impracticable. Further, defendants have introduced no evidence with reference to cost figures, other than the consideration paid for the tract in its original state, and have presented no evidence which would tend to show that enforcement of the restriction would render their property unfit or unprofitable for use, or would result in a far greater

hardship to them than benefit to plaintiffs. If evidence had been offered to show that development subject to the restriction was economically feasible, the restriction would be enforced even though such development would result in lesser profits for defendants, but if evidence had been offered to show that the restriction could be enforced only by entirely sacrificing the use and development of defendant's ground, the restriction might well have been viewed in a different light: Ellis v. Dubin, 16 D. & C. 2d 779. On the present record, a balancing of the equities involved weighs heavily in favor of plaintiffs, and that a preliminary injunction should issue appears to be an inescapable conclusion.