# Weiherer, Appellant, *v.* Werley.

Argued April 25, 1966.  Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Frederick G. McGavin,* with him *Joseph E. DeSantis, Franklin E. Poore, III,* and *McGavin, DeSantis & Koch,* for appellant.

*Raymond C. Schlegel,* with him *Harry W. Speidel, Scott L. Huyett,* and *Balmer, Kershner, Mogel & Speidel,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, June 24, 1966:

Appellant filed a complaint in equity, alleging, inter alia, that at appellees' request, she conveyed to them a certain parcel of real estate situate in Bern Township, Berks County, Pennsylvania, for an inadequate consideration; that at the time of this conveyance she did not have sufficient mental capacity to comprehend the true meaning of her act, and that while she was in this condition, she gave the appellee, Norman G. Werley, on August 15, 1960, a power of attorney, to enable him to handle appellant's affairs. On August 27, 1960, appellant alleges that while in this weakened condition, she executed an agreement to sell the aforesaid parcel of real estate for a consideration of $15,000. Her complaint prays that the deed be declared fraudulent and void; that appellees be directed to reconvey the aforementioned real estate to appellant, and that appellees be ordered to account for rents, proceeds, and any other increments received for the property, and to pay over to her the amount determined to be due. The complaint further prayed that Norman G. Werley be ordered to account to the appellant for any and all actions taken by him pursuant to the power of attorney given him on August 15, 1960, and revoked on December 14, 1960.

Appellees filed an answer, denying that appellant lacked sufficient mental capacity to understand the nature and effect of a power of attorney and the agreement of sale for the aforementioned property; that the price paid for the property was inadequate, and that a requested accounting under the power of attorney granted to appellee had been refused, but, in effect, averring that such an accounting had been offered after certain documents were made available to the appellee, but that these documents were never delivered to the appellee.

The matter was tried before the chancellor on January 20, 1964, and on November 24, 1964, the chancellor filed his adjudication. Exceptions were filed by appellant on December 11, 1964, and argument was heard by the court en banc, which, by an opinion filed on January 6, 1965, dismissed appellant's exceptions and entered a final decree. This appeal followed.

The appellant and her deceased husband were the owners of the tract of land in question and had erected an automobile service station with adjoining dwelling quarters thereon. The appellant's husband died on August 13, 1960, and title to this real estate vested in his widow, Edna V. Weiherer. Two days after the death of her husband, appellant executed a general power of attorney, appointing Norman G. Werley, and at that time, executed her Will, in which the appellees were to receive the major portion of the specific bequests, including an opportunity to purchase the property in question for $20,000. These instruments were prepared by Carl F. Mogel, Esquire, who was both recommended and procured for appellant by appellees.

On August 27, 1960, appellant executed an agreement to sell the real estate in question to appellees for $15,000. Norman G. Werley's testimony reveals, however, that appellant offered to sell the real estate in question to him, asking $20,000 for it. He said: "Well

that is more than I want to pay for it", and let it go at that until a few days later. He further testified that he later answered her question as to what he would give for it by saying that: "Well with the moneys that I have invested in the gas station I feel as though I could not give more than $10,000 for it" and that appellant felt it was not quite enough. He further testified that prior to the sale, appellant and appellees sat down and talked it over, and that appellant said: "Let's meet halfway, I'll come down five and you go up five." An agreement of sale was prepared after these negotiations, and signed on August 27, 1960. At the time of settlement on September 19, 1960, Carl F. Mogel, Esquire, who had prepared the necessary papers, explained all of these papers to appellant, and she signed them.

Appellant contends that the death of her husband precipitated in her a mental illness known as agitative reactive depression, and that during the period when the aforementioned agreements and documents were executed, she had sought the aid of her family physician, and that at his request, she was admitted on September 26, 1960, to the psychiatric section of Reading Hospital and remained there until November 2, 1960, under the care of Elmer L. Horst, M.D., chief of the department of neurology and psychiatry. On December 28, 1961, proceedings were held in the orphans' court to have a guardian appointed for appellant and, on January 8, 1962, the president judge of that court declared her then to be mentally incompetent.

The chancellor, in his adjudication, made 22 Findings of Fact, those pertinent being as follows: "12. During said negotiations, the plaintiff asked defendants to pay the sum of $20,000.00 for said premises, the defendants offered $10,000.00, and thereafter they compromised at a price of $15,000.00.

"13. That on September 19, 1960, the plaintiff executed a Deed conveying title to the subject premises to the defendants, which Deed was prepared by Carl F. Mogel, Esquire, and discussed with plaintiff at her home by the said Carl F. Mogel, Esquire, prior to its execution.

"15. During the period of time in which plaintiff alleges she was incompetent to sign the Agreement of Sale and the Deed of Conveyance in question, August 27, 1960 to September 19, 1960, the plaintiff understood the nature and effect of what she was doing when she received rent payments from tenants and gave receipts therefor.

"16. During the same period of time in which plaintiff alleges she was incompetent to sign the Agreement of Sale and the Deed of Conveyance in question, plaintiff understood the nature and effect of what she was doing when she signed checks and paid bills which she owed.

"17. During the same period of time, August 27, 1960 to September 19, 1960, the plaintiff understood the nature and effect of what she was doing when she signed a federal estate tax 60-day preliminary notice with respect to her husband's estate.

"19. The plaintiff, at the time she signed the Agreement of Sale and Deed of Conveyance in question understood the nature and effect of what she was doing.

"20. The fair market value of the parcel of real estate in question at the time it was conveyed by Plaintiff to the Defendants, was $15,000.00."

The basic question, before the court below, was whether appellant possessed legal capacity at the time she executed the documents in question. Appellant, in her brief, cites *Crawford v. Scovell*, 94 Pa. 48 (1880), for the proposition that "An insane person is incapable of making a valid deed, for he wants the consenting

mind." We do not disagree with this proposition, but the record does not support a finding of insanity.

The record discloses ample evidence to support the chancellor's findings of fact Nos. 15, 16, 17 and 19, indicating that appellant was competent to enter into the disputed transactions.

Appellant further contends that a confidential relationship existed as a matter of law between the appellant and the appellees at the time of execution of the instruments in question. We held in *Kees, Executor, v. Green,* 365 Pa. 368, 75 A. 2d 602 (1950), that: " ' "Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; . . . . In some cases the confidential relation is a conclusion of law, in others, it is a question of fact to be established by the evidence": [citing cases]. "A confidential relationship . . . exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest": Drob v. Jaffe, 351 Pa. 297, 300, 41 A. 2d 407, 408.' "

As we said in *Shydlinski v. Vogt,* 406 Pa. 534, 537, 179 A. 2d 240 (1962): "A confidential relationship 'While not confined to any specific association of parties, . . . generally exists between . . . principal and agent.' Leedom v. Palmer, 274 Pa. 22, 117 A. 410 (1922). Where such a relationship exists and a conveyance is made to the party in whom such trust or confidence is reposed, the burden is upon the grantee to show the fairness of the transaction. Palmer v.

Foley, 305 Pa. 169, 157 A. 474 (1931) ; Leedom v. Palmer, supra."

Assuming, arguendo, that the general rule quoted from *Leedom* is applicable to the facts in the instant case, that the relationship of the parties was a confidential one, as evidenced by the record, showing that the appellant confided in appellees concerning her financial affairs and requesting their help and assistance, and as is evidenced by the power of attorney executed, we believe the record contains more than sufficient evidence to sustain appellees' burden.

The record reveals that even prior to the death of appellant's husband, the appellant and her husband were thinking about selling the property in question to appellees. This is supported by the Will executed by Mrs. Weiherer in which she gave the appellees the right to purchase the property for $20,000 at her death. If appellant's contentions as to undue influence and lack of capacity on her part were well founded, appellees should have been able to purchase the property for their initial offer of $10,000, rather than the figure of $15,000 which appellees testified was arrived at after some negotiation, and which the chancellor, in his Finding of Fact No. 20, decided was the fair market value of the property in question.

We must give some consideration to appellant's argument that the chancellor abused his discretion and committed legal error when he allowed Carl F. Mogel, Esquire, to testify on behalf of appellees, and allowed his law partner to replace him as counsel of record for appellees. Canon No. 6 of the Canons of Professional Ethics of the American Bar Association provides as follows: "6. Adverse Influences and Conflicting Interests. It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the

selection of counsel. It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose. The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client *with respect to which confidence has been reposed.* [Emphasis added.]"

Canon No. 19 reads as follows: "APPEARANCE OF LAWYER AS WITNESS FOR HIS CLIENT. When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. *Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.* [Emphasis added.]"

We must disagree with appellant's contention that the chancellor erred in allowing Mr. Mogel to testify, as the record indicates that Mr. Mogel did little more than act as scrivener, preparing the documents in question, and no evidence of any confidential relationship existing between appellant and Mr. Mogel is apparent, rather, it seems, that he was acting at that time as an attorney for both parties, as both parties were always present. We believe that under the circumstances, it would have constituted better professional taste if counsel other than that of the firm of Mr. Mogel had represented the appellees, but this alone will not justify a reversal in the instant case. See *Coulter Estate,* 406 Pa. 402, 178 A. 2d 742 (1962). As a full disclosure had been made to the chancellor at all times, he must certainly have given due consideration to this

question. As we said in *Bokoch v. Noon,* 420 Pa. 80, 215 A. 2d 899 (1966), and as we have often said: ". . . the findings of a chancellor have the effect of a jury verdict and, when affirmed by the court en banc, will not be reversed if there is adequate evidence to sustain them and if they are not premised on erroneous inferences and deductions or an error of law. Further, we held that, on appeal, the question is not whether the appellate court would have reached the same conclusion on the same evidence, but whether the evidence is sufficient to support the chancellor's conclusion. See Schwartz v. Urban Redev. A. of Pgh., 416 Pa. 503, 206 A. 2d 789 (1965) and cases cited therein."

In the instant case, after a careful review of the record, we find no indication that the facts found by the chancellor lack sufficient support in the record. Although the chancellor allowed Mr. Mogel's partner to act as trial counsel after disclosure had been made, in view of the evidence to support the chancellor's findings, we believe that no prejudice resulted to appellant and, therefore, hold that, in this instance, reversible error did not occur.

Decree affirmed. Each side to bear own costs.