Schulman et al., Appellants, *v.* Serrill.

Argued April 23, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 13, 1968.

*John T. Acton,* with him *Jenkins and Acton,* for appellants.

*Cassin W. Craig,* with him *Rosemary M. Flannery,* and *Wisler, Pearlstine, Talone & Gerber,* and *Wright, Spencer, Manning & Sagendorph,* for appellees.

208

OPINION BY MR. JUSTICE ROBERTS, October 3, 1968:

This is an action instituted by the appellants seeking to declare null and void certain building restrictions which have been in effect since 1904. In that year E. Clarence Miller and his wife, Mary W. Miller conveyed a portion of a larger tract to William H. Millard. The deed contained the following language:

"That no building to be erected upon said premises shall ever be *used* or *occupied* as a hotel, tavern, drinking saloon, blacksmith, carpenter or wheelwright shop, steam mill, tannery, slaughter house, skin dressing establishment, livery stable, glue, soap, candle or starch manufactory or for any other offensive purpose or occupation whatsoever. That no building except for residence purposes shall ever be *erected* upon said premises . . . ." (Emphasis added.)

The original Miller Tract, originally consisting of close to sixty acres, has been subsequently subdivided and currently consists of about sixty-six separate properties. The named defendants were the owners at the time the restriction was created, but the intervening defendants, thirty-seven in number, represent the real parties in interest. The tract is located in Cheltenham Township in Montgomery County, Pennsylvania, and is bounded by Cheltenham Avenue on the south, by York Road on the west, by Mountain Avenue on the east and by a line roughly parallel to Cheltenham Avenue approximately one thousand four hundred feet north of it.

The properties of the appellants form a portion of the southern perimeter along Cheltenham Avenue, approximately two blocks west of its intersection with York Road. Appellants, George Goodman and Fay Goodman, are owners of a little less than two acres occupied by a large dwelling house which is currently vacant and is situated between Sharpless Road and

Mountain Avenue, two of the streets which divide the Miller tract east and west. Appellant Schulman's property is approximately two acres of vacant land, located between 12th Street and Sharpless Road, just to the west of the Goodman property.

Naturally, there have been many changes in the tract and the surrounding area since the original deed of 1904. Besides the subdivision of the tract itself, the properties across York Road and Cheltenham Avenue have been developed with commercial and residential uses. Both of these streets have evolved from two lane country roads to major arterial highways, with Cheltenham Avenue, fronting on appellants' properties, having just recently been widened and an underpass constructed at its intersection with York Road. On January 4, 1965, Cheltenham Township enacted a new zoning ordinance. Under this ordinance the Cheltenham Avenue frontage of the Miller Tract on which plaintiffs' properties are located was rezoned from AA Residential to M-3 Multiple dwelling or office classification to a depth of 150 feet. It is appellants' contention that these various changes and developments should have resulted in a favorable decision declaring these restrictions in the deed null and void.

Appellants argue that because of the extensive change in conditions surrounding their properties, it would be improper for this covenant to be enforced. Their contention is two pronged, pointing to the nonresidential uses within the restricted tract and to the change in character of the neighborhood surrounding the tract. The nonresidential uses within the tract include three large homes which have been converted to offices, and one which is currently being used by a church. Plaintiffs assert that these four uses represent (1) serious inroads into the residential character of the tract and (2) should be considered violations of

the deed restrictions. Either assertion, if true, would be sufficient to render this restriction unenforceable as to these two properties.

First, we consider the nonresidential character of the tract itself. The chancellor found that all of these uses were conducted in buildings originally erected for single family use and that the buildings do not readily reveal the internal nonresidential uses. These findings led him to conclude that the changes barely affect the neighbors and do not impair the essential residential qualities of the buildings. This conclusion, as a finding of fact, is entitled to great weight, since the chancellor inspected the area in question. His findings affirmed by the court en banc have the force and effect of a jury verdict and should not be reversed if supported by evidence of the required quality. *Weiherer v. Werley*, 422 Pa. 18, 221 A. 2d 133 (1966); *Bokoch v. Noon*, 420 Pa. 80, 215 A. 2d 899 (1966). This evidence is present and, in addition, it is admitted by all the parties that the conversion of the structures is limited to their internal use, the dwellings themselves maintaining the exterior appearance of large single family residences. Nor did the court err in refusing to hold as a matter of law that the conversion of use created such a change in the character of the neighborhood that the restriction should not be upheld. *McGrath v. Wilcox Estate*, 82 Montg. Co. L.R. 161, 166 (1962); *Beck v. Frost*, 22 Pa. D. & C. 2d 475 (1960).

Appellants further contend that the *use* conversions of the four structures rise to the level of violations of the covenant and therefore render any future application of the restriction, at least to properties on the arterial highways, unlawful. The restriction provides: "That no building except for residence purposes shall ever be erected upon said premises . . . ." It also in-

cludes other use restrictions and dimensional limitations which are not here relevant. It is accepted by both sides that deed restrictions are not favored by the law; they represent an interference with the owner's free and full enjoyment of his property. Therefore the law appropriately construes them most strictly against the grantor. To interpret this restriction as appellants urge and limit not only the type of structure which may be erected, but also the internal use of the buildings themselves, would be contrary to this basic rule of construction. A use prohibition has not been expressly stated in this restriction and it would be improper to enlarge the restriction's terms by implication. "A building restriction and a use restriction are wholly independent of one another, and . . . the one is not to be extended so as to include the other unless the intention to do so is expressly and plainly stated . . . ." *Jones v. Park Lane for Convalescents,* 384 Pa. 268, 273, 120 A. 2d 535, 538 (1956). Therefore we hold that the four conversions did not represent violations of the covenant.[1]

Appellants' second argument involves changes in the neighborhood outside of the restricted tract, changes alleged to be of such a nature that it would be inequitable not to grant relief from this restriction. It was the court's finding that the "neighborhood is still predominantly single family residential in character." The issue is not over the standard to be applied, which clearly seems to be the "immediate and not the remote neighborhood." *Price v. Anderson,* 358 Pa. 209, 218, 56 A. 2d 215, 220 (1948); *Calvary Pres-*

---

[1] This holding moots one of appellants' later arguments that appellees acquiesced in the open and notorious violation of the deed restriction over the last twelve years and thus have waived any opportunity to express their opposition to the appellants' contemplated buildings in this proceeding. Since we have found that the use conversions did not amount to violations of the deed restriction, this argument must fail.

byterian Church of Highland Park v. Jones, 322 Pa. 77, 80, 185 Atl. 267, 268 (1936). Rather, it is whether or not the area which the chancellor considered relevant is properly within the meaning of "immediate neighborhood." Obviously, each side has chosen that part of the surrounding area which bests supports its position. Appellants would have us extend our view to all of the commercial uses in an area one-half mile to either side of the subject property; appellees, of course, emphasize the number of residences and residential-looking structures.

Once again, however, this Court must give deference to the finding of the hearing court since the chancellor inspected the area. Having concluded that "the evidence reveals that the original purpose of maintaining this tract as an exclusive, high class, suburban residential neighborhood has not been frustrated" this Court would be reluctant to overturn the finding unless it is clearly wrong. In addition, there is certainly sufficient evidence in the record concerning the residential areas outside of the tract (on the west side of York Road and the south side of Cheltenham Avenue east of its intersection with York Road) to sustain the chancellor's conclusion that the character of the neighborhood had not changed to a degree that the enforcement of this deed restriction would be inequitable.

Further, even limiting the "neighborhood" to the restricted tract itself is not without precedent, Beck v. Frost, supra, and the development across a broad highway such as Cheltenham Avenue west of its intersection with York Road is not necessarily controlling. See McGrath v. Wilcox Estate, supra. Price v. Anderson, supra, a case cited by the appellants, is distinguishable in that it involved a situation where there were no occupants of residences or apartment houses surrounding the servient tenement who could be adversely affected. This is not the situation here.

Appellants also argue that this covenant should not be enforced because it is no longer of substantial benefit to the remaining property owners vis-a-vis development on their property along Cheltenham Avenue. For this proposition, appellants cite *Price v. Anderson,* supra, a case which they claim is "almost on all fours" with the instant case. In *Price* the Court refused to uphold the deed restriction, despite defendant's contention that it remained of "substantial benefit" to them. But that case is clearly distinguishable, since the plaintiffs there sought to uphold the prohibition of commercial use on defendant's property only to retain control of *commercial* uses for themselves. Thus in *Price* the substantial benefit was a competitive advantage over potential commercial users. In this case, the substantial value which the appellees wish to retain is the very residential quality for which the restriction was designed; they are not distorting the restriction's purpose.

It is true that public policy dictates that land will not be "burdened with . . . restrictions . . . in order to sustain the literal or technical observance of a covenant which for one reason or another has become useless from the standpoint of any practical utility." *Price v. Anderson,* supra, at 218, 56 A. 2d at 220. Appellants in their brief concede that the standards are "impossibility of accomplishment" and the degree to which enforcement of the restriction will result in a "*far* greater hardship to the servient than benefit to the dominant." Equity will enforce a building restriction, notwithstanding changes in the neighborhood, where it is established that the restriction is still of substantial value to the owner of the dominant lot.[2]

---

[2] This proposition is not as broad as it may appear since any determination of substantial benefit necessarily includes a consideration of changes in the neighborhood.

*Todd v. Sablosky,* 339 Pa. 504, 15 A. 2d 677 (1940). This benefit must be in the "physical use or enjoyment of the land possessed by him," Restatement, Property, §537, and "must in some way make the use or enjoyment more satisfactory to his physical senses." Restatement, Property, §537, comment f.

Since the appearance of a well-kept residential area has been maintained under the deed restriction and can still be maintained if only residential buildings are constructed, the restriction is of substantial value. Some of the property owners testified that they purchased and built homes within the last five years with notice of and in reliance on this restriction. It can easily be understood that, although appellants' properties are on the perimeter of the tract and *possibly* could be developed commercially consistent with the remaining properties in the restricted area, continued enforcement of the restriction will maintain the tract's residential character. Thus it could not be contended successfully that denying appellants' prayer would be a useless or futile gesture or so anachronistic that it could be compared to the placing of hitching posts on today's streets. *Henry v. Eves,* 306 Pa. 250, 159 Atl. 857 (1932).

Nor can appellants persuasively assert that the hardship to them would be "far greater" than the benefit of the restriction to appellees. *Katzman v. Anderson,* 359 Pa. 280, 285, 59 A. 2d 85, 87 (1948). Even if it be true that the properties cannot be developed practically for single dwelling houses and that the highest and best use for the properties is for office buildings as the appellants' expert testified, neither of these conclusions is dispositive. There is no evidence that development of the land for apartment uses, which certainly would be consistent with the deed restriction, *Johnson v. Jones,* 244 Pa. 386, 90 Atl. 649

(1914), is an economically unfeasible alternative. Appellants' expert testimony was limited to the relative *desirability* of offices over apartments. And the chancellor's own conclusion that apartments could be profitably erected finds ample support in the record. It is not inequitable to enforce a deed restriction merely because it bars the highest and best use, so long as this is not the only reasonable use available. See *Katzman v. Anderson,* supra.

Finally, appellants cite the 1965 Cheltenham Township Zoning Ordinance to demonstrate the inequity of a decision adverse to their interests. As a first principle, it is conceded by both sides that a zoning ordinance alone cannot constitutionally relieve land from the burden of a restrictive covenant. *Blossick v. Huber,* 54 Lan. Rev. 385 (1955); *Ault v. Shipley,* 189 Va. 69, 52 S.E. 2d 56 (1949). Thus at best this is only one more factor to be considered together with the other arguments advanced. But its weight is further reduced by the fact that it does not necessarily follow from the commissioner's decision to change the classification to M-3 that a change in the character of the neighborhood had occurred. Many other factors such as a desire to expand the tax base may have motivated the zoning change. These factors, however, would not be relevant at all to a decision as to whether to overturn the restrictions; the latter determination is governed by considerably different standards. Thus there was no need for the chancellor to become involved in the factors which motivated the zoning change, the examination of which would have resulted in the litigation of a purely collateral issue.

We find no basis for disturbing the findings and conclusions of the court below.

Decree affirmed. Each party to pay own costs.

Mr. Justice COHEN dissents.

216

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The building restriction which all agree must be strictly construed against the grantors and their successors in title pertinently provides: "That no building *except for residence purposes** shall ever be erected upon said premises . . . or used or occupied as a hotel, etc. or for any other offensive purpose or occupation whatsoever."

When the grantors or their grantees or successors have abandoned the restriction, or there has been a substantial change in the character of the *immediate neighborhood,* Equity will not restrain a violation thereof unless the building restriction is still of substantial value to a dominant lot: *Price v. Anderson,* 358 Pa. 209, 56 A. 2d 215. The neighboring buildings superficially resemble residences; they have a residential exterior with a commercial interior. They masquerade as residences but they are in reality similar to a Dr. Jekyll and Mr. Hyde.

I would hold that the so-called residences which are used for commercial purposes, *and have become commercial buildings* (1) are no longer residences, and (2) that the crucial finding of the chancellor is a conclusion and not a true finding of fact, and consequently is not entitled to the weight which an appellate Court accords to a true finding of fact. *Watt Estate,* 409 Pa. 44, 50, 185 A. 2d 781; *Selheimer v. Manganese Corp.,* 423 Pa. 563, 581, 224 A. 2d 634.

I would therefore hold that this building restriction, which is essentially a residential restriction, is no longer equitably enforceable.

Mr. Justice MUSMANNO joins in this dissenting opinion.

---

\* Italics, ours.